233 N.J. Super. 271 (1989)
558 A.2d 854
ROBERT F. GOLD AND AMELIA G. GOLD, PLAINTIFFS-APPELLANTS,
v.
AETNA LIFE & CASUALTY INSURANCE COMPANY, DEFENDANT-RESPONDENT, AND PETER S. PRZYBYSEWSKI, JOHN DOE, ABC CORPORATION, AND DEF CORPORATION (FICTITIOUS NAMES), DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 9, 1989.
Decided May 26, 1989.
*272 Before Judges O'BRIEN, SCALERA and STERN.
John M. Bashwiner argued the cause for appellants (Bashwiner and Woods, attorneys, John M. Bashwiner, on the brief).
Michael B. Oropollo argued the cause for respondent (Hoagland, Longo, Oropollo & Moran, attorneys, Michael B. Oropollo, of counsel, Debra T. Kuser, on the brief).
The opinion of the court was delivered by SCALERA, J.A.D.
This case centers on whether the provisions of the underinsured motorist endorsement in plaintiffs' automobile insurance policy require submission to arbitration to determine its applicability where plaintiffs have settled with three alleged tortfeasors *273 for less than the limits of the latter's insurance coverage.
On November 19, 1984, plaintiff Robert F. Gold, whose wife Amelia sues per quod, was involved in a chain car accident while traveling eastbound on Route 10 in Morris Plains. An unidentified car in front of his car allegedly came abruptly to a halt and as plaintiff came to a stop, his car was struck in the rear by the cars in line behind him. The first car behind plaintiff was driven by Peter Przybysewski, the second by Carolyn Kendall and the third by Mary Garvey. Plaintiff allegedly suffered severe bodily injuries as a result of the accident.
Plaintiffs negotiated a settlement with the insurance companies for these three other drivers for a total sum of $112,500 which plaintiffs allege to be less than the total actual damages which they sustained in the accident. Garvey, with a liability insurance policy limit of $300,000, settled for $70,000. Kendall, with a liability insurance policy limit of $25,000, settled for $20,000. After this suit was instituted Przybysewski, a party defendant with a liability insurance policy limit of $25,000, settled for $22,500.
At the time of the accident, the car driven by Robert was insured by defendant Aetna Life & Casualty Insurance Company (Aetna) with an underinsured motorist coverage limit of $250,000. The dispute in this suit involves the interpretation of that coverage in the insurance policy and whether it is implicated in this situation[1].
An underinsured motor vehicle is defined in the policy as a
"vehicle ... to which a liability bond or policy applies at the time of the accident but its limit for liability is less than the limit of liability for this coverage, ..."
It also provides that Aetna
"will pay damages under this coverage caused by an accident with an underinsured motor vehicle only after the limits of liability under any applicable *274 liability bonds or policies have been exhausted by payment of judgments or settlements."
The arbitration clause applicable to such coverage states that either party to the insurance contract may demand arbitration if the other does not agree on "[w]hether that person is legally entitled to recover damages under this endorsement; or ... [a]s to the amount of damages" and that such arbitrators' decision "will be binding" with respect thereto.
Plaintiffs assert that this matter must be submitted to arbitration in order to resolve who are the actual responsible tortfeasors and to determine the amount of their damages. Once these issues are settled, it is argued, then they can determine whether plaintiffs are entitled to any of the underinsured motorist benefits. Aetna maintains that the applicable law and the insurance policy provisions do not require arbitration here because the total insurance coverage limits for the three other vehicles involved in the accident amounts to more than the $250,000 underinsured limits provided to plaintiffs in its policy. In other words, since the Garvey, Kendall and Przybysewski policy limits total $350,000, more than the underinsured limits covering plaintiffs in the Aetna policy, plaintiffs' right to claim any underinsurance benefits is precluded.
The parameters of the arbitration clause found in the uninsured endorsement of most automobile insurance policies have not been discussed in this context in New Jersey. Cf. Nikiper v. Motor Club of America Cos., 232 N.J. Super. 393 (App.Div. 1989).
Aetna points to N.J.S.A. 17:28-1.1(e) and argues that arbitration is unnecessary here since the liability policies which Garvey, Kendall and Przybysewski carried constitute "available" coverage, as a matter of law.
N.J.S.A. 17:28-1.1(e)(1), states in part:
... A motor vehicle is underinsured when the sum of the limits of liability under all bodily injury and property damage liability bonds and insurance policies available to a person against whom recovery is sought for bodily injury or property damage is, at the time of the accident, less than the *275 applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy held by the person seeking that recovery. A motor vehicle shall not be considered an underinsured motor vehicle under this section unless the limits of all bodily injury liability insurance or bonds applicable at the time of the accident have been exhausted by payment of settlements or judgments. The limits of underinsured motorist coverage available to an injured person shall be reduced by the amount he has recovered under all bodily injury liability insurance or bonds.... [Emphasis supplied].

I.
Aetna argues preliminarily that the determination of this threshold issue is one for the court and not the arbitrators. Plaintiffs, however, do not address that issue at all on this appeal. Nonetheless, we note that our Supreme Court has determined that an arbitrator has jurisdiction to decide whether a party was covered under an uninsured endorsement. In re Grover, 80 N.J. 221, 229 (1979). In that case, however, "[c]overage, having been raised by [the insurance company] and tried before the arbitrator without objection by plaintiff, thereby came within the scope of those matters which the arbitrator could properly decide." Ibid. Thus, Grover is not apposite because here Aetna has refused to arbitrate any issue at all. Recently, in Ohio Cas. Ins. Co. v. Benson, 87 N.J. 191, 198 (1981), the Court again discussed an arbitration clause of an uninsured motorist endorsement, but stated that the case did not present the broad issue of whether arbitrators can decide questions of coverage. The Benson court nevertheless found that the arbitrator could decide the factual question of whether a hit-and-run vehicle caused the insured's accident, because resolution of that issue was a prerequisite to a determination as to whether the insured could file a claim under his uninsured motorist coverage. Recently, in Bocelli v. Hanover Metro Ins. Co., 219 N.J. Super. 6, 9 (App.Div. 1987), we held that as to disputed matters under an uninsured motorist endorsement, "a court decides only whether a person is a `covered person' as defined in the endorsement and the arbitrators decide whether the endorsement affords coverage to a `covered person.'"
*276 Here, however, there is no dispute that plaintiffs do come within the definition of "covered persons" for underinsured coverage purposes, and therefore we perceive no need to wrestle with that issue.

II.
Since the issue of coverage is not in dispute, we address directly whether arbitration is necessary in order that there may be an adjudication of the question of which driver or drivers, the unidentified driver of the front car, Garvey, Kendall or Przybysewski are responsible as actual tortfeasors and how much plaintiffs' claim is worth.[2] We have no hesitancy in concluding that such a determination is mandated because that is the only way in which the parties here may ascertain what insurance coverage is "available" to plaintiffs under the statute and the insurance policy. Thus, we hold that when the statute, N.J.S.A. 17:28-1.1(e), speaks of "available" insurance coverage, it plainly refers to that of persons who are actual responsible tortfeasors and not that of those who may have been "involved" in the accident without being liable under the law. To rule otherwise would lead to the result that underinsured coverage would be eliminated whenever entirely blameless persons involved in an accident happen to be heavily insured.
In asserting that all three of the identified vehicles involved in this accident had "available" policies which should be totaled to reach a combined limit of $350,000, Aetna mistakenly relies on Tyler v. N.J. Auto. Full Ins. Underwriting Assoc., 228 N.J. Super. 463 (App.Div. 1988) wherein we stated: "The plain meaning of the statute is that underinsured motorist benefits are available if (and to the extent) the tortfeasor's liability limits are lower than the limits of the underinsured motorist coverage contained in the plaintiff's policy." Id. at 466. It is *277 clear that our reference there was to an actual tortfeasor and not an innocent or non-responsible participant in the accident.
Nor does Longworth v. Van Houten, 223 N.J. Super. 174 (App.Div. 1988) lend support for Aetna's position. In Longworth, we held only that "if the victim does accept less than the tortfeasor's policy limits, his recovery against his [Underinsured Motorist] carrier must nevertheless be based on a deduction of the full policy limits." Id. at 191. Thus, underinsured motorist benefits are to be determined on the basis of an actual tortfeasor's policy limits and not the settlement amounts paid to the injured party. That approach simply reinforces what we hold today that only after the actual tortfeasors have been authoritatively established or adjudicated can one apply that principle. Cf. Nikiper v. Motor Club of America Cos., supra. In light of the dispute between the parties here that issue must be decided by arbitration. Thus, if the arbitrators determine that Garvey was an actual tortfeasor here, her liability insurance coverage limits of $300,000 would eliminate Aetna's underinsured coverage of $250,000, regardless of the value placed on plaintiffs' claims. On the other hand, if Garvey is found not to be an actual tortfeasor, the underinsurance clause coverage is implicated regardless of whether either Kendall or Przybysewski or both are determined to be actual tortfeasors since each has only $25,000 coverage.
In order to complete the analysis under the contract provision in issue here, the amount of plaintiffs' damages must also be established in order to determine if they are entitled to more than $112,500 which they have already received from the settlements and in order that credits can be assessed properly. Ciluffo v. Middlesex Gen. Hosp., 146 N.J. Super. 476, 482 (App.Div. 1977). For example, if we assume that plaintiff's damages are determined to be worth more than $112,500 and if the arbitrators determine that Garvey was not an actual tortfeasor, then Aetna would be entitled to a credit of the $70,000 actually paid to plaintiffs by her insurance carrier without regard to her policy limits of $300,000. Cf. Riccio v. Prudential *278 Property & Cas. Ins. Co., 108 N.J. 493 (1987) and Childs v. New Jersey Manufacturers Ins. Co., 108 N.J. 506 (1988) (favoring pro tanto credit in cases where defendant settled and plaintiff subsequently sought uninsured motorist coverage); Hoeller v. Coleman, 73 N.J. Super. 502 (App.Div. 1962) certif. den. 38 N.J. 362 (1962).[3] On the other hand, if the arbitrator concludes that she is an actual tortfeasor, Aetna would be entitled to credit for her full $300,000 policy limit even though plaintiffs have only received $70,000 from her insurer. Longworth v. Van Houten, supra. In the latter scenario, plaintiffs would suffer the loss incident to their improvident settlement with an actual tortfeasor. The same reasoning would apply to Kendall and Przybysewski.
In sum, a determination of the alleged tortfeasors' respective responsibility as well as an adjudication of the total value of *279 plaintiffs' damages is necessary before it can be decided whether any underinsured benefits in the Aetna policy are payable to plaintiffs at all and in what amount.
Thus, we reverse and remand for entry of an order requiring submission to arbitration in accordance with this opinion and the applicable policy provision.
NOTES
[1] The other named fictitious defendants were never identified or served in this suit.
[2] We do not concern ourselves with plaintiffs' potential comparative negligence since no one raised that issue at this point.
[3] If plaintiffs had brought a common law suit against these defendants, the outcome might be different. In Rogers v. Spady, 147 N.J. Super. 274, 277-278 (App.Div. 1977) this court noted that where plaintiff settles with a non-negligent party, the other, negligent defendants will not receive a pro tanto credit for that settlement amount. Thus, under common law principles, plaintiff might receive more than his actual damages. However, our Supreme Court has observed that the goals and purposes of the uninsured motorist law differ from those of the Joint Tortfeasors Contribution Law and the Comparative Negligence Act. Thus, as remedial legislation designed to protect innocent victims of financially irresponsible motorists, the essential purpose of the uninsured motorist coverage is to make the victim whole. It is not designed, however, to give the victim a windfall or double recovery. Riccio v. Prudential Property & Cas. Ins. Co., 108 N.J. 493, 503-505 (1987). In Riccio, the Court said,

If there appears to be an anomaly in that the pursuit of a tort claim, either to verdict or to settlement, against named defendants in a law court may produce quite different results from those obtained through the processing of a UM claim in arbitration, so be it. We do not seek perfect symmetry so much as faithful adherence to basic principles of contract law and to the legislative intent in respect of statutorily mandated uninsured motorist coverage. [Id. at 505].
Thus, while we recognize that Rogers might suggest that plaintiffs' settlements with non-negligent parties should not affect the liability of negligent parties, we believe the deduction of settlement proceeds from any potential underinsured motorist benefits is consistent with the public policy underlying the availability of contracted UIM coverage.