295 N.J. Super. 328 (1996)
685 A.2d 36
CLAUDE BREITENBACH, PLAINTIFF-APPELLANT,
v.
MOTOR CLUB OF AMERICA INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 22, 1996.
Decided November 27, 1996.
*329 Before Judges PRESSLER,[1] STERN and WECKER.
Seamus Boyle argued the cause for appellant (Weiseman Hely, attorneys; Mr. Boyle, on the brief and reply letter brief).
Alan H. Bernstein argued the cause for respondent (Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone, attorneys; Mr. Bernstein, of counsel; Mr. Bernstein and David J. Klein, on the brief).
*330 The opinion of the court was delivered by STERN, J.A.D.
In this case defendant, who provided underinsured motorist (UIM) coverage to plaintiff, insists that plaintiff's acceptance of a settlement with the tortfeasor, perfected within thirty days of plaintiff's notice to the carrier of the offer, deprived defendant of its subrogation rights and, thus, excuses it from UIM liability. The motion judge agreed with defendant, and plaintiff appeals from a judgment dismissing his order to show cause and verified complaint seeking to compel the carrier ("defendant" or "MCA") to arbitrate his claim for UIM benefits.
For purposes of defendant's motion to dismiss, it is uncontested that before accepting the $15,000 policy limits of the vehicle that hit plaintiff, plaintiff's counsel, by letter of September 6, 1995,[2] advised defendant of the offer "to settle the matter for the full extent of the insurance policy limits of $15,000" and that, unless he heard to the contrary "in writing within thirty (30) days" of the letter, counsel and the insured would "assume" both that "[t]here is no objection to the settlement ... in exchange for a General Release" and that "[a] separate claim file shall be set up for a claim under your Underinsured provision." The covering letter also indicated that a police report, medical reports and medical bills were enclosed. Information was also supplied regarding a workers' compensation lien. By memorandum dated September 25, 1995, the carrier acknowledged receipt of the letter and asked counsel to "contact the writer to discuss the claim."
Plaintiff contends that after discussions with the carrier (the substance of which is disputed), plaintiff accepted the policy limits from the tortfeasor and gave a release, dated September 21, 1995, in exchange for the tortfeasor's $15,000 policy limit received by plaintiff's counsel on October 6, 1995. (The check of the tortfeasor's insurer was dated October 2, 1995). According to plaintiff's counsel, settlement discussions continued with MCA, and he supplied *331 additional information to the carrier. He also gave defendant's representative the name of a UIM arbitrator. While not in the record before us, defendant apparently wrote to plaintiff's attorney on January 2, 1996 requesting additional information. Plaintiff responded by sending the additional documents on January 10, 1996. Subsequently, on January 16, 1996, MCA orally advised plaintiff that its subrogation rights were prejudiced by the release and it would not be naming an arbitrator.[3]
Plaintiff argues that he obtained authorization from a representative of the carrier to settle and that, even if he had not, the lack of a timely objection by MCA demonstrated the absence of prejudice by the settlement. MCA argues that any waiver of subrogation rights must be in writing and, as the motion judge here found, that Longworth v. Ohio Casualty Group, 223 N.J. Super. 174, 538 A.2d 414 (App.Div. 1988), requires written permission to settle, and that plaintiff's failure to wait thirty days before so doing irreparably prejudiced defendant's subrogation rights.[4]See also Rutgers Casualty Ins. Co. v. Vassas, 139 N.J. 163, 652 A.2d 162 (1995) (adopting the Longworth procedure).
Plaintiff contends that "[i]t is clear from the record [including the notes of defendant's adjuster] that defendant ... chose to allow plaintiff to settle." Plaintiff insists that the defendant's notes reflect that on September 27, plaintiff advised defendant that he was looking "for at least $60,000" from MCA separately under its UIM coverage and that MCA even made an offer to pay plaintiff $6,000 on October 5, 1995, before the tortfeasor's settlement check was received. According to plaintiff "the $6,000 can only mean defendant acquiesced in the settlement with the tortfeasor and was attempting to settle the claim for underinsured *332 motorist benefits" above the $15,000 limits of the tortfeasor's policy. Defendant counters that the facts are in dispute and do not reflect either a settlement or approval of the release. It further insists that, in any event, plaintiff is not entitled to relief because, by not waiting the thirty days required by Vassas and Longworth, it irrevocably waived its right to collect UIM benefits.
It is undisputed that MCA never gave any formal or written response advising plaintiff not to settle with the tortfeasor. Defendant's primary argument boils down to the proposition that, because plaintiff did not wait the thirty days to permit MCA to respond, defendant must be deemed prejudiced as a matter of law notwithstanding that defendant never issued a written response, even on the 30th, 60th or 100th day following notice. Defendant contends that a carrier is entitled to an irrebuttable presumption of prejudice whenever the insured settles with a tortfeasor, without the carrier's express written consent, if that settlement occurs within thirty days of the notice. It asserts this is so irrespective of the carrier's knowledge or actual prejudice in the case.
Vassas explains the dilemma which gives rise to the issue we face:
The difficulty presented in Longworth was that the insurance contract's exhaustion, subrogation, and consent-to-settle clauses thrust insured victims of auto accidents into a contractual impasse that frustrated the intent and policy of the Legislature in authorizing UIM coverage. 223 N.J. Super. at 184, 538 A.2d 414. Exhaustion clauses required an insured to exhaust the tortfeasor's insurance limits before making a claim on his own UIM carrier. Id. at 182, 538 A.2d 414. For an insured whose damages exceeded his tortfeasor's insurance coverage, exhaustion could most expeditiously be achieved by settling with the tortfeasor for, or close to, the policy limits. Id. at 183, 538 A.2d 414. However, the tortfeasor's insurer would usually settle only upon the execution of a general release of liability. Id. at 184, 538 A.2d 414. Yet under the insured's UIM policy, the insured could not execute a general release without violating the subrogation rights of the UIM carrier. Ibid. "Consequently, the victim cannot simultaneously give a release to the tortfeasor and protect his UIM insurer's right to subrogation." Ibid.

[Vassas, supra, 139 N.J. at 171-72, 652 A.2d 162.]
The dilemma facing a UIM insured was resolved in Longworth and Vassas:

*333 If the insured receives a settlement offer or arbitration award that does not completely satisfy the claim, because the tortfeasor is underinsured, the UIM insurer then has two options: offer to pay the insured the amount of the tortfeasor's settlement offer or the arbitration award, usually the tortfeasor's policy limit, in exchange for subrogation of the insured's rights against the tortfeasor; or, allow the insured to settle. In either case, the UIM insurer must further allow the insured the benefit of the UIM coverage. If the insurer does not respond within the time allotted for rejection of the award or settlement offer, the insured victim may, consistent with Longworth, supra, more for a declaratory ruling on order to show cause concerning the parties' rights and responsibilities. In this manner, the insured victim is afforded the protection and benefits of the tortfeasor's insurance coverage in addition to the insured's own UIM coverage. As well, the UIM carrier is able to weigh the relative merits of allowing its insured to settle and paying the difference in UIM benefits compared with paying its insured the settlement offer plus UIM benefits and itself maintaining a subrogation action against the tortfeasor.
The Longworth procedure balances the interests of insureds and insurers, injured victims and tortfeasors. It provides the insured victim an opportunity both to assert liability against the tortfeasor and to determine the liability of the UIM insurer. In addition, it apprises the UIM insurer of pending litigation by one of its insureds, which may obligate it to provide UIM coverage under the insured's policy.
[Vassas, supra, 139 N.J. at 174-75, 652 A.2d 162 (emphasis added).]
The thirty day time period was developed because of its relation to rejection of an arbitration award. See N.J.S.A. 39:6A-24 to -35; N.J.S.A. 39:6A-31; R. 4:21A; R. 4:21A-6(b); Vassas, supra, 139 N.J. at 172-73, 652 A.2d 162; Longworth, supra, 223 N.J. Super. at 194-95, 538 A.2d 414. Defendant relies on the underlined language in Vassas for the proposition that plaintiff's remedy is to file a declaratory judgment before settling with the tortfeasor, even where there is no response after thirty days. See also Longworth, supra, 223 N.J. Super. at 194-95, 538 A.2d 414. However, nowhere in Vassas nor Longworth is it suggested that either this court or the Supreme Court intended to make processing UIM claims more complex or to otherwise encourage additional litigation by requiring an insured to file a declaratory judgment action against his carrier before accepting a settlement or arbitration award. Certainly an insured "may" file such an action to assure no claim of jeopardy to the carrier's right of subrogation. Ibid. But that does not mean the insured "must" bring an action. Nor does it mean that the settlement cannot be accepted after *334 thirty days in the absence of a written response from the carrier, or even (at the insured's risk) within the thirty day period.
In context, Longworth referred to a summary declaratory judgment action when the insured requires a response from the carrier within the thirty day period, or when the carrier, within that period, requests additional information or more time for consideration. 223 N.J. Super. at 194-95, 538 A.2d 414. Longworth discussed the significance of not being able to wait such period when, for example, the "litigation has already commenced" and
the tortfeasor's offer is made shortly before or at the commencement of trial, [and] the 30-day period may not terminate until the trial has been concluded. In that situation, the UIM insurer may have to respond within days, hours or minutes in order for plaintiff [insured] to be spared the necessity of continuing to trial despite an acceptable offer.
[Id. at 189-90, 538 A.2d 414.]
Thus, when the Supreme Court stated, in the underscored language in Vassas, that "[i]f the insurer does not respond within the time allotted for rejection of the award or settlement offer, the insured victim may, consistent with Longworth, supra, move for a declaratory ruling on order to show cause ...," the court was referring only to such action when the insured could not wait thirty days or for the additional period requested in writing by the carrier. Vassas, supra, 139 N.J. at 175, 652 A.2d 162.
Even accepting a settlement within the thirty day period, in the absence of a declaratory judgment action, however, does not per se constitute prejudice to the UIM carrier. By not waiting the thirty day period, the insured takes a risk and must demonstrate either consent or waiver by the carrier or a lack of prejudice to the carrier if the carrier, within that period, gives notice of its election to pay the settlement amount. Cf. American Family Mut. Ins. Co. v. Baumann, 459 N.W.2d 923, 927 (Minn. 1990). (Longworth rejected portions of the Minnesota model).
Here, the motion judge dismissed plaintiff's complaint, stating:
The plaintiff in this matter has acted precipitously and acted without the appropriate confirmation or the appropriate assurances needed to protect all of the parties consistent with the practice of Longworth. The release had been prepared *335 prior to the receipt of the alleged oral waiver, had been tendered prior to the expiration of the 30 day period.
The execution of the release and the receipt of the funds and the disbursement of the funds have now irreparably prejudiced the defendant's subrogation rights. Again, Longworth has not been complied with either in spirit or literally because of a lack of compliance with its terms and I feel and I am of the opinion that that lack of compliance is indeed fatal to the plaintiffs recourse against this defendant for uninsured motorist's coverage at this point in time.
We disagree with the motion judge to the extent he concluded that execution of the release within the thirty day period constituted a per se bar to UIM coverage.
While plaintiff settled with the tortfeasor within the thirty days, defendant never delivered a response within that period, either objecting to the settlement or offering to pay the settlement proceeds. Having not responded in writing within thirty days of receipt of plaintiff's notice, the carrier's right of subrogation cannot be deemed to have been compromised. Thus, although he settled with the tortfeasor, plaintiff can also pursue his UIM claim against the carrier. Cf. Fisher v. USAA Cas. Ins. Co., 973 F.2d 1103, 1107-09 (3d Cir.1992) (no bar to UIM claim when carrier denied coverage and did not respond to notice of settlement).
The judgment is reversed, and the matter is remanded for further proceedings consistent with this opinion.
NOTES
[1] Judge Pressler did not participate at argument, but with the consent of the attorneys has participated in disposition of the appeal.
[2] The cover page was dated September 5, 1995. The other pages were dated September 6, 1995.
[3] Plaintiff states that defendant's representative simultaneously offered a $10,000 settlement of the UIM claim.
[4] The parties agree that the policy language and procedures referred to in Longworth are applicable and that no relevant alternatives are applicable. See Longworth, supra, 223 N.J. Super. at 192-94, 538 A.2d 414.