753 A.2d 141 (2000)
332 N.J. Super. 185
CNA INSURANCE COMPANIES, Plaintiff-Respondent,
v.
Peter CAVE, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued April 5, 2000.
Decided June 20, 2000.
Stephen D. Brown, East Orange, for defendant-appellant.
John C. Simons, New Brunswick, for plaintiff-respondent (Hoagland, Longo, Moran, Dunst & Doukas, attorneys; Mr. Simons on the brief).
Before Judges BAIME, EICHEN and WECKER.
The opinion of the court was delivered by WECKER, J.A.D.
This appeal raises once again the question of the effect of a Longworth[1] violation on a carrier's obligation to provide underinsured motorist (UIM) coverage to its insured.
Plaintiff, CNA Insurance Companies, contends that because defendant, Peter Cave, settled his case against two defendants on the trial date, without giving notice to CNA of one defendant's last-minute offer, that settlement bars any UIM recovery by Cave and excuses CNA from participating in UIM arbitration. The Law Division Judge granted plaintiff's *142 summary judgment motion without explaining the reasons for his decision, merely saying "I think the law is with CNA. Clearly, this is one for the Appellate Division." The question presented is whether the carrier nevertheless is obligated to participate in UIM arbitration to allow the claimant to establish that the settling defendant in the auto accident case was not a tortfeasor, thereby proving that the carrier was not prejudiced by claimant's acceptance of the offer and the carrier's resulting loss of subrogation rights. We conclude that on these facts, the carrier must participate in UIM arbitration.
The motion judge's failure to explain the reasons for his decision is contrary to court rules. See R. 1:7-4; R. 2:5-1(b). The failure is particularly troubling when the unexplained decision grants summary judgment disposing of a party's claim. Indeed, the motion judge's apparent recognition that his decision was likely to be appealed was all the more reason to clearly enunciate both the findings of fact and the legal reasoning that supported the decision. Leaving it to the Appellate Division to sort out the record and the issues is a disservice to the parties and the court. Curtis v. Finneran, 83 N.J. 563, 569-70, 417 A.2d 15 (1980).
The relevant facts are these. Defendant, Peter Cave, was a passenger in a car driven by Joshua Brandt, who died as a result of the 1994 accident. It appears that Brandt went through a blinking red light and collided with a car driven by William Giles. Cave was seriously injured in the accident. The UIM endorsement under the CNA policy covering Cave provided $100,000 maximum UIM coverage.[2] Brandt carried a minimum $15,000/$30,000 policy issued by Allstate Insurance Company. Giles was covered by a $500,000 single limit policy issued by Hanover Insurance Company.
Cave filed a complaint against both Brandt's estate and Giles in February 1996. On February 27, 1997, Cave's attorney wrote to CNA to advise that he had received a $10,000 offer from Brandt's carrier. That offer reflected payment of equal sums to three injured parties, thereby exhausting Brandt's $30,000 policy limit. Cave's letter notice to CNA was consistent with the procedures outlined in Longworth v. Van Houten, 223 N.J.Super. 174, 538 A.2d 414 (App.Div.1988). The letter asked CNA to decide within thirty days whether it wished to preserve its right to subrogate against Brandt. On March 5, 1997, in a phone call between Cave's attorney and a CNA representative, the attorney advised that Brandt was dead, that Giles' carrier had taken a "no-pay" position, and that a trial date was scheduled for April 1.[3] By letter confirming that conversation, CNA requested additional information from Cave's attorney and indicated that after receipt of the information sought, CNA would advise him of its decision. Although Cave's attorney apparently did not provide CNA with all of the requested information, CNA determined that Brandt had no assets and decided not to seek subrogation as to Brandt.
Cave's liability expert as well as Giles's liability expert provided pretrial reports opining that Brandt's negligence was the sole cause of the accident, that Giles was not negligent, and that Giles's conduct was not a proximate cause of the accident. Thus at a time when Cave had every motivation to establish Giles's responsibility for the accident, he himself offered evidence that Giles was not a tortfeasor.
As of April 1, the day trial was to begin, Brown had not heard from CNA regarding its decision on the $10,000 settlement offer from Brandt's insurer, Allstate. On *143 that date, in the courthouse, Hanover, Giles's insurer, for the first time offered Cave $5,000 in settlement of his claim against Giles. Cave promptly accepted $10,000 from Brandt and $5,000 from Giles and provided both defendants with general releases, without notifying CNA of the Giles offer. The case was dismissed with prejudice.
On April 16, a CNA representative called plaintiff's attorney seeking to learn Giles's policy limit and learned about the settlements for the first time. CNA informed Cave's attorney that CNA disputed his contention that Giles had no liability. When Cave sought CNA's participation in arbitration on his UIM claim, CNA brought this declaratory judgment action seeking a determination that it was not obligated to participate in UIM arbitration on account of Cave's violation of Longworth with respect to his settlement with Giles.[4]
At oral argument in the Law Division, the motion judge asked Cave's counsel why he did not immediately notify CNA about the day-of-trial offer. The following colloquy ensued:
THE COURT: So are you saying the judge didn't give you enough time to make a phone call to CNA and say, look, we were offered $5,000; do you want to pay it or do you want to come down here and try this case.
MR. BROWN: IIto be honest, Your Honor, II didn't even raise that as an issue at that particular point in time. The case was moving, the Judge had ordered the jury to come down, and it was either we were going to try to settle this case right now or we were going toyou know, we were going to send it out.
Hindsight being 20/20, if it came up again I probably would just go see the presiding Judge and say we need an adjournment. But at that particular point in time we were at trial, CNA had notice. And when they had the initial notice, all they had done was sit down and send a letter asking for all of this information.
I felt at that time if I would have picked up the phone and called it wouldn't have changed their position. They still would have wanted additional time[.]
In Longworth, Judge Pressler anticipated the situation Cave found himself in on the trial date, that is, that there would be various circumstances that would affect the appropriate time frame within which a UIM carrier must be notified of a settlement offer and in turn must decide either to consent to the proposed settlement and give up its right of subrogation against the tortfeasor or pay the injured party the amount offered on behalf of the tortfeasor and thereby preserve its subrogation rights.
[I]f the tortfeasor's offer is made very shortly after the accident, the insurer may need more time in which to evaluate the claim. If, on the other hand, litigation has already commenced, [the presumptive] 30 days may be much too long. Thus, for example, if the tortfeasor's offer is made shortly before or at the commencement of trial, the 30-day period may not terminate until the trial has been concluded. In that situation, the UIM insurer may have to respond within days, hours or minutes in order for plaintiff to be spared the necessity of continuing to trial despite an acceptable offer.
[Longworth, supra, 223 N.J.Super. at 189-90, 538 A.2d 414.]
Cave's failure to notify CNA of the day-of-trial settlement offer clearly violated the requirements of Longworth, as further explicated in Rutgers Cas. Ins. Co. v. Vassas, 139 N.J. 163, 173-76, 652 A.2d 162 (1995) and Rivers v. Allstate Ins. Co., 312 N.J.Super. 379, 383-84, 711 A.2d 974 (App.Div.1998). CNA was entitled to *144 some notice of the Giles offer, however short, and the opportunity to choose between the alternatives of paying Cave $5,000 and taking over trial against Giles or agreeing to the settlement and waiving any further claim against him.[5] Nevertheless, as we said in Breitenbach v. Motor Club of Am. Ins. Co., 295 N.J.Super. 328, 334-35, 685 A.2d 36 (App.Div.1996), settling a case in violation of Longworth and Vassas is not a per se bar to UIM coverage. In Breitenbach we rejected "an irrebuttable presumption of prejudice." 295 N.J.Super. at 332, 685 A.2d 36.
[A]ccepting a settlement within the thirty day period ... does not per se constitute prejudice to the UIM carrier. By not waiting the thirty day period, the insured takes a risk and must demonstrate either consent or waiver by the carrier or a lack of prejudice to the carrier if the carrier, within that period, gives notice of its election to pay the settlement amount.

[Id. at 334, 685 A.2d 36.]
In Rivers, we also said:
We do not read the Supreme Court's opinion in Vassas to create a bright-line rule that the insured's failure to protect the insurer's right of subrogation amounts to prejudice per se, sufficient under all circumstances to deny the insured UIM benefits and excuse the insurer from its coverage obligation.

[312 N.J.Super. at 386, 711 A.2d 974.]
A plaintiff who defaults on his obligations under Longworth must be allowed to prove "that his premature release of the insurer's subrogation rights caused the insurer no damage." Id. In Rivers, we recognized that Breitenbach
would apparently ... allow an insured relief if the insured was capable of proving a "lack of prejudice" to the insurer, even though the insurer's subrogation right had been extinguished by the release. Presumably this means, by way of example, if an insured can demonstrate that the underinsured tortfeasor is assetless, and that it is improbable that an insurer would choose to subrogate against the tortfeasor, UIM benefits should not be withheld from the insured. This is another way of saying that the insured's breach of the contract was not material under the circumstances.
[Rivers, 312 N.J.Super. at 385-86, 711 A.2d 974 (citation omitted).]
However, we distinguished Breitenbach because the UIM carrier in Rivers sought additional information in a timely fashion and the plaintiff did not present evidence to support its claim that the carrier suffered no prejudice.
There is no question that Cave's attorney failed to notify CNA of Giles's last minute offer. The task before us is to determine whether loss of Cave's UIM coverage is the appropriate sanction. However unlikely it may be under the circumstances that CNA would have forced the case to trial in order to maintain its right to subrogation against Giles, CNA is entitled to protection against any prejudice it reasonably may have suffered as a result of Cave's unauthorized settlement with Giles. CNA is not, however, entitled to a windfall.
We continue our analysis by considering the applicable statutory definitions. N.J.S.A. 17:28-1.1e(1) defines underinsured motorist coverage and an underinsured vehicle:
"underinsured motorist coverage" means insurance for damages because of bodily injury and property damage resulting from an accident arising out of the ownership, maintenance, operation or use of an underinsured motor vehicle. Underinsured *145 motorist coverage shall not apply to an uninsured motor vehicle. A motor vehicle is underinsured when the sum of the limits of liability under all bodily injury and property damage liability bonds and insurance policies available to a person against whom recovery is sought for bodily injury or property damage is, at the time of the accident, less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy held by the person seeking that recovery. A motor vehicle shall not be considered an underinsured motor vehicle under this section unless the limits of all bodily injury liability insurance or bonds applicable at the time of the accident have been exhausted by payment of settlements or judgments. The limits of underinsured motorist coverage available to an injured person shall be reduced by the amount he has recovered under all bodily injury liability insurance or bonds ...[.]
In UIM coverage disputes that do not involve a Longworth violation, we have repeatedly held that "the availability of UIM coverage depends solely on the aggregate liability of actual tortfeasors and that the settlement of a claim against an alleged tortfeasor does not bar the insured from seeking a determination by an arbitrator that the settling party was not liable." Prudential Property & Cas. Ins. Co. v. Kress, 241 N.J.Super. 81, 84, 574 A.2d 482 (App.Div.1990) (emphasis added) (citing Gold v. Aetna Life & Cas. Ins. Co., 233 N.J.Super. 271, 276, 558 A.2d 854 (App.Div.1989)). The Supreme Court has quoted Gold with approval for the proposition that the measure of "available" coverage under N.J.S.A. 17:28-1.1e for purposes of comparison with the insured's UIM limit, is "that of persons who are actual responsible tortfeasors and not that of those who may have been `involved' in the accident without being liable under the law." Green v. Selective Ins. Co. of America, 144 N.J. 344, 352, 676 A.2d 1074 (1996) (quoting Gold, 233 N.J.Super. at 276, 558 A.2d 854).
Cave's Longworth violation should not affect the basic principle that only an actual tortfeasor's insurance is to be considered "available" in the first instance in determining whether UIM coverage is available, and then in determining the extent of that coverage.
The logical forum for determining the respective liability of Brandt and Giles, as well as the fair value of Cave's injuries, is in UIM arbitration. See Gold, 233 N.J.Super. at 276-78, 558 A.2d 854; Craig & Pomeroy, New Jersey Auto Insurance Law 28:2 (2000). As we held in both Breitenbach and Rivers, a plaintiff who violates his duty to his UIM carrier does so at his own risk. But the risk he incurs is the inability to prove that the carrier was not prejudiced by the plaintiff's destruction of the carrier's subrogation rights. As we said in Rivers, "[t]his is another way of saying that the insured's breach of [the insurance] contract was not material under the circumstances." 312 N.J.Super. at 385-86, 711 A.2d 974. Unlike the circumstances in Vassas, where the claimant was found to have unfairly prejudiced the UIM carrier's subrogation rights, and unlike Rivers, where we found that the plaintiff had "failed to advance any facts demonstrating a lack of prejudice to Allstate," 312 N.J.Super. at 386, 711 A.2d 974, here the record strongly suggests a lack of prejudice to CNA. Cave must be afforded the opportunity to prove the lack of prejudice in an arbitration if CNA maintains that Giles was a tortfeasor.
We see no grounds for punishing plaintiff for his attorney's misstep by barring his UIM claim entirely, thereby allowing CNA to avoid its contractual responsibility for Brandt's underinsured condition. Both Cave and CNA will be fairly protected if CNA is required to participate in UIM arbitration, where liability and damages will be determined and apportioned between the two named defendants, who may or may not both be tortfeasors.
*146 Under the rationale of Longworth, as approved in Vassas, there is no basis at this juncture for finding that CNA has no coverage obligation to Cave. Of course, even if CNA's coverage applies, there may be grounds for finding that no benefits are recoverable on account of that coverage. That finding depends upon a determination of comparative responsibility between Brandt and Giles, as well as a determination of Cave's total damages. UIM arbitration, an obligation undertaken by CNA in its insurance contract, is the appropriate forum for those determinations. The Brandt vehicle was underinsured, and to the extent that he was a tortfeasor responsible to Cave for damages in excess of his available and applicable insurance, there is no reason for CNA to avoid the UIM coverage for which it contracted.
If Giles is found not to have been negligent, then he was not a tortfeasor, and CNA will have suffered no prejudice whatsoever as a result of the Giles settlement. In any event, CNA will have the benefit of Giles's settlement, because CNA will be entitled to pro tanto credit for the $5,000 Giles settlement as well as the $10,000 Brandt settlement. See N.J.S.A. 17:28-1.1e(1); Gold, 233 N.J.Super. at 277-78, 558 A.2d 854. On the other hand, should Giles be found negligent to any extent, the effect of such a finding may raise questions that we need not reach at this stage.
We perceive no inconsistency between our holding here and our holding in Ainsworth v. State Farm Mut. Ins. Co., 284 N.J.Super. 117, 131-32, 663 A.2d 1365 (App.Div.1995), certif. denied, 143 N.J. 328, 670 A.2d 1068 (1996). In Ainsworth we held that a UIM carrier cannot be required to arbitrate a potential UIM claim until "plaintiff's underlying action against [the tortfeasor] is finalized by an offer of settlement of the policy limits or a judgment exhausting the policy limits." Id. at 131, 663 A.2d 1365. We declined to require the UIM carrier "to participate in what may very well be meaningless arbitration." Id. at 132, 663 A.2d 1365. The arbitration we order today cannot be meaningless under the given circumstances. Cave would have been entitled to UIM arbitration even if CNA had had the opportunity and had chosen to take over the trial against Giles. As Judge Pressler said in Longworth,
Even if we were to assume that change of attorney were practical in the given circumstances, it is clear that the litigation against the tortfeasor so conducted could not be binding on the insured vis-a-vis his UIM claim against the carrier. This is so because of the evident conflict of interest between insured and insurer as to both the tortfeasor's liability and the amount of the judgment against him. Thus, arbitration of the UIM claim would still have to take place.

[223 N.J.Super. at 190, 538 A.2d 414.]
Cave's attempt to argue a bad-faith claim against CNA on this appeal, an issue not raised in the Law Division, is contrary to the rules. R. 2:6-2. A party may not seek relief in the Appellate Division on a cause of action not first raised at the trial level, and we are not required to address that claim. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973); compare R. 2:10-5 (providing for original jurisdiction under limited circumstances).
We reverse and remand for entry of an order requiring CNA to participate in UIM arbitration.
NOTES
[1] Longworth v. Van Houten, 223 N.J.Super. 174, 538 A.2d 414 (App.Div.1988).
[2] Cave was insured as a resident relative of a CNA policyholder, Jocelyn Roach.
[3] CNA contradicts itself in its brief, stating first that "at no point did Brown advise that the case carried a trial date ...," and later apparently conceding that "CNA was only advised of the trial date one month prior to trial...."
[4] CNA does not contend that the settlement with Brandt violated Longworth.
[5] CNA argued for the first time at oral argument on this appeal that it was prejudiced because it lost the opportunity on the trial date to negotiate a better settlement with Giles's carrier. To the extent that we consider that argument, we are satisfied that the record does not support the contention that CNA was likely to have induced Giles's carrier to increase its offer.