766 A.2d 776 (2001)
337 N.J. Super. 104
Francis HRESHKO, Plaintiff-Appellant,
v.
The HARLEYSVILLE INSURANCE COMPANY, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted December 13, 2000.
Decided February 1, 2001.
*777 Gill & Chamas, Woodbridge, attorneys for appellant (William P. Mikita, Jr., of counsel and on the brief).
McElroy, Deutsch & Mulvaney, Morristown, attorneys for respondent (H. George Avery, on the brief).
Before Judges KEEFE, EICHEN, and STEINBERG.
The opinion of the court was delivered by KEEFE, J.A.D.
Plaintiff, Francis Hreshko, appeals from the entry of summary judgment in favor of defendant, Harleysville Insurance Company (Harleysville). The practical effect of the summary judgment was the dismissal of plaintiff's underinsured motorist (UIM) claim against Harleysville. The Law Division judge found that plaintiff's conduct prejudiced Harleysville's subrogation rights, thereby disentitling plaintiff from recovering under the UIM endorsement of his insurance policy. We reverse and remand the matter for further proceedings in accord with this opinion.
Because the judgment under review results from a summary judgment motion, we are required to consider the facts in a light most favorable to plaintiff. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). On July 15, 1988, plaintiff was involved in a motor vehicle accident. The police report reflects that plaintiff was stopped in traffic when his vehicle was struck in the rear by a vehicle operated by Peter Pasterlak and owned by his sister Barbara. Fernando Coelho, who was operating the motor vehicle behind Peter Pasterlak, informed the investigating police officer that he saw the Pasterlak vehicle strike plaintiff's vehicle. Coelho said that he then attempted to stop his vehicle, but failed and struck the Pasterlak vehicle in the rear. Plaintiff has always maintained that he felt only one impact to the rear of his vehicle, which he attributed to Pasterlak.
On September 22, 1988, plaintiff engaged Louis Ippolito to represent him in connection with a potential claim. Ippolito instituted suit against the Pasterlaks on July 12, 1990, three days before the statute of limitations expired. The Pasterlaks were insured by N.J.A.F.I.U.A. The policy was serviced by Liberty Mutual Insurance company, who assigned attorney John Strichek to represent the Pasterlaks. An *778 answer was not filed on their behalf until July 9, 1991, almost one year after suit was instituted. The reason for the delay does not appear in the record.
On September 11, 1991, Ippolito learned that the Pasterlaks' policy limit was $100,000 per person. On April 19, 1993, Strichek informed Ippolito that there was additional insurance covering the Pasterlaks in the amount of $15,000 per person issued by Continental Insurance. Ippolito thus believed that there would be $115,000 insurance coverage available to satisfy plaintiff's claim against the Pasterlaks.
On August 26, 1993, Ippolito informed Harleysville that plaintiff intended to make a claim against it under the UIM endorsement of the policy. He requested that a representative contact him because he "need[ed] the consent of Harleysville to settle the main liability action."
In preparation for trial, Ippolito determined that the cost of expert witness fees would total $30,000. In November 1993, Strichek extended an offer of $85,000 to settle plaintiff's claim against the Pasterlaks. Plaintiff decided to accept the offer in light of the cost of prosecuting the matter to judgment and with the understanding that he could pursue a UIM claim against Harleysville. According to Ippolito, the case was marked settled with the Middlesex County Assignment Clerk's office, subject to approval of the settlement by Harleysville. However, an Order of Dismissal with prejudice was entered by the Assignment Judge on January 10, 1994. The form order recites that it was being entered because "[c]ounsel ... represented to the Court that the ... cause has been settled."
A letter from Ippolito to Harleysville, dated June 3, 1994, stated that plaintiff had settled his claim with the Pasterlaks for $85,000, subject to Harleysville's approval, and asked the representative to inform him if Harleysville approved the settlement or intended to pursue subrogation. The letter reflects that there had been prior communications between Ippolito and Harleysville concerning plaintiff's UIM claim. Ippolito informed Harleysville that he was "still preparing the financial package," but believed plaintiff's claim would "approach $200,000." The Harleysville policy provided $300,000 per person UIM coverage.
The following month, Harleysville replied that it could not approve the settlement until it more fully understood plaintiff's claim. It listed the missing information it required for that purpose. Ippolito supplied information to Harleysville in February 1995, demanded the UIM limits in settlement, and asked Harleysville to approve the settlement with the Pasterlaks. After additional demands and exchanges of correspondence and information, Harleysville informed Ippolito on August 3, 1995, that it approved plaintiff's settlement with the Pasterlaks. It informed Ippolito, however, that the approval was not to be considered as "a waiver of any defense Harleysville has to Francis Hreshko's claim for underinsured motorist benefits."
It was not until Harleysville approved the settlement that plaintiff executed a release. The release, dated August 7, 1995, inexplicably ran only in favor of Barbara Pasterlak. Additionally, it was not until the release was forwarded to Strichek that a stipulation of dismissal with prejudice was signed by Strichek and Ippolito and filed with the court.
Plaintiff engaged his current attorney in June 1998. When Harleysville refused to settle or arbitrate plaintiff's UIM claim, the current suit was instituted. Plaintiff's only claim for relief was an order seeking arbitration. The parties engaged in discovery which included the deposition of Peter Pasterlak. In that deposition, Pasterlak stated that, after he struck plaintiff in the rear, his car was struck by Coelho, which again forced his car into plaintiff. This was the first time Pasterlak mentioned two impacts with plaintiff.
*779 Harleysville moved for summary judgment. In its motion brief, Harleysville advanced several theories to defeat its insured's UIM claim. Its arguments were developed on two factual scenarios which it claimed "dovetailed" and required a dismissal of plaintiff's complaint. The first scenario was premised on its claim that, with respect to Pasterlak, plaintiff failed to comply with the requirements set forth in Longworth v. Van Houten, 223 N.J.Super. 174, 538 A.2d 414 (App.Div.1988), and Rutgers Cas. Ins. Co. v. Vassas, 139 N.J. 163, 652 A.2d 162 (1995) (hereinafter collectively referred to as "Longworth/Vassas"). Specifically, Harleysville contended that plaintiff prejudiced its right of subrogation against the Pasterlaks by settling the claim and allowing the dismissal of the complaint with prejudice in January 1994, prior to receiving Harleysville's approval of the settlement. In the second scenario, Harleysville pointed to plaintiff's failure to join Coelho in his Law Division suit. It argued that plaintiff did not qualify for UIM benefits because he failed to seek a settlement or judgment against all potential tortfeasors. Harleysville asserted that, irrespective of plaintiff's belief that there was only one impact, Pasterlak's deposition supported the contention that Coelho's $300,000 insurance coverage would have been available to satisfy plaintiff's claim. It claimed that plaintiff had an obligation to sue Coelho, and it was prejudiced by reason of plaintiff's failure to do so.
After entertaining oral argument, the motion judge granted Harleysville's motion and dismissed plaintiff's complaint. The judge granted the motion solely on plaintiff's failure to join Coelho in the underlying tort action. The judge found it was plaintiff's "obligation" to sue Coelho, despite the fact that plaintiff believed there was only one impact, and his failure to do so exhibited his "bad faith." The judge did not address Harleysville's argument that, with respect to the claim against the Pasterlaks, plaintiff prejudiced its right of subrogation.
We first address the issue the trial judge found determinative of plaintiff's UIM claim; that is, the claimed duty of a UIM claimant to join a party in a third-party liability action who the UIM claimant believes is not a tortfeasor, the consequences of his failure to do so, and where that issue is to be decided. The resolution of this issue is best explained in the context of the facts of the case.
Plaintiff sued the Pasterlaks, claiming that Peter Pasterlak was the sole cause of his damages. The Pasterlaks, despite Peter Pasterlak's apparent belief that there were two impacts, did not join Coelho as a third-party defendant seeking contribution from him as a joint tortfeasor. There was $115,000 in liability insurance under two separate insurance policies available to the Pasterlaks to settle plaintiff's claim. Plaintiff's UIM endorsement under the Harleysville policy afforded him $300,000 in per person benefits. Accordingly, the Pasterlaks were underinsured as to plaintiff. N.J.S.A. 17:28-1.1(e)(1).
Plaintiff's acceptance of $85,000 in settlement of his claim against the Pasterlaks did not destroy his right to seek UIM benefits from Harleysville simply because plaintiff did not exhaust the entire coverage available to him under the Pasterlaks' two policies. Rather, Harleysville would be entitled to a credit of $115,000 against its $300,000 UIM coverage. See Longworth, supra, 223 N.J.Super. at 192, 538 A.2d 414. Contrary to Harleysville's argument on appeal, Ainsworth v. State Farm Mut. Ins. Co., 284 N.J.Super. 117, 663 A.2d 1365, (App.Div. 1995), certif. denied, 143 N.J. 328, 670 A.2d 1068 (1996), does not hold to the contrary. Rather, Ainsworth, which followed Longworth, simply stands for the proposition that a UIM insurer cannot be compelled to arbitrate a UIM claim in a vacuum. See Id. at 131-32, 663 A.2d 1365. There must be a settlement with a third-party defendant, or an award in favor of a putative UIM claimant against a tortfeasor before *780 arbitration can be compelled. See CNA Ins. v. Cave, 332 N.J.Super. 185, 194, 753 A.2d 141 (App.Div.2000).
Therefore, the settlement of the claim against the Pasterlaks was the necessary prelude for plaintiff's UIM claim against Harleysville. It is true that Coelho was not underinsured with respect to plaintiff. That is so, because Coelho's liability coverage of $300,000 per person was not less than plaintiff's UIM coverage. N.J.S.A. 17:28-1.1(e)(1). The important question, however, in the context of the statute and the facts of this case is whether Coelho's liability coverage was "available" to plaintiff. The answer to that question depends on whether Coelho was a tortfeasor.
[W]hen the statute, N.J.S.A. 17:28-1.1(e), speaks of `available' insurance coverage it plainly refers to that of persons who are actual responsible tortfeasors and not that of those who may have been `involved' in the accident without being liable under the law. To rule otherwise would lead to the result that underinsured coverage would be eliminated whenever entirely blameless persons involved in an accident happen to be heavily insured.
[Gold v. Aetna Life & Cas. Ins. Co., 233 N.J.Super. 271, 276, 558 A.2d 854 (App.Div.1989).]
This principle of law was later accepted by our Supreme Court in Green v. Selective Ins. Co. of America, 144 N.J. 344, 352, 676 A.2d 1074 (1996).
Thus, hypothetically, if plaintiff had joined Coelho in the litigation and accepted a settlement from him, plaintiff would not be barred from presenting a UIM claim against Harleysville if the settlement was less than $300,000. In such a case, arbitration would have been the appropriate forum for determining whether Coelho was a tortfeasor. Gold, supra, 233 N.J.Super. at 277, 558 A.2d 854; Prudential Prop & Cas. v. Kress, 241 N.J.Super. 81, 86-87, 574 A.2d 482 (App.Div.1990). In terms of plaintiff's UIM claim, the consequences of settling the claim for less than the policy limit and an arbitration determination that Coelho was a tortfeasor might very well depend upon the percentage of fault attributed to him and the value of plaintiff's claim as determined by the arbitrators. CNA v. Cave, supra, 332 N.J.Super. at 193-94, 753 A.2d 141; Craig & Pomeroy, New Jersey Auto Insurance Law, § 28:3, at 424-28 (2001). On the other hand, if Coelho was found not to have been a tortfeasor, his insurance was not "available" to plaintiff in the context of the UIM statute, and plaintiff suffers no consequence except for a pro tanto reduction in any UIM award that he might have received. Gold, supra, 233 N.J.Super. at 277-78, 558 A.2d 854.
The principles of law remain the same, and, therefore, the result should be no different where, as here, plaintiff has not named Coelho as a defendant in the underlying action because he did not believe Coelho was a tortfeasor. The UIM endorsement does not require an insured to join all persons involved in the accident in the third-party suit, irrespective of fault, in order to protect the insurer's subrogation rights. Nor has Harleysville cited any case law that mandates such action. Indeed, such a requirement would run afoul of the principle that a claim must be filed in good faith and have an evidentiary and legal basis. R. 1:4-8(a)(2) and (3); see also N.J.S.A. 2A:15-59.1.
Rather, the UIM endorsement in the subject Harleysville policy provides:
If we and an "insured" do not agree:
1. Whether that person is legally entitled to recover damages under this endorsement; or
2. As to the amount of damages; either party may make a written demand for arbitration.
Harleysville's position in this case is that plaintiff is not legally entitled to UIM benefits for several reasons. One of them is that Coelho was a tortfeasor, and, therefore, *781 his insurance coverage was "available" to plaintiff, who failed to take advantage of that coverage. That issue falls within the arbitration clause of the policy. Regardless of whether plaintiff was correct or incorrect in his assessment of Coelho's involvement, the consequences of that decision can by the terms of the endorsement be resolved through arbitration. If the arbitrators determine that Coelho was not a tortfeasor, Harleysville has not been prejudiced by plaintiff's failure to join him. If the arbitrators determine that Coelho was a tortfeasor, they must assess his percentage of fault and fix the total value of plaintiff's claim. Clearly, if Coelho's coverage would have been sufficient to satisfy his percentage of fault under applicable comparative fault principles at the time of the accident, Coelho is not underinsured as to plaintiff and plaintiff suffers the consequences of failing to join him in the third-party action. If, on the other hand, Coelho's comparative fault contribution somehow makes his available insurance coverage insufficient to satisfy plaintiff's claim, an unlikely event under the facts as we know them, Harleysville would be entitled to full credit for Coelho's $300,000 coverage, just as if Coelho had been joined in the third-party action and was dismissed without payment. Under that scenario, Coelho is still not underinsured as to plaintiff because his insurance coverage is not less than plaintiff's UIM coverage. N.J.S.A. 17:28-1.1(e)(1). Thus, Harleysville is again not prejudiced by the failure to join Coelho. Accordingly, the trial judge erred in finding that plaintiff prejudiced Harleysville by not suing Coelho.
Related to the first issue is the question of whether plaintiff's conduct in some way prejudiced Harleysville's subrogation rights against the Pasterlaks. The trial judge did not address this issue. With respect to this claim, Harleysville argues that plaintiff did not follow the required Longworth/Vassas procedures. Its argument is premised on the assumption that the January 10, 1994, order of dismissal is binding on the parties and barred any subrogation rights that Harleysville may have wanted to pursue against the Pasterlaks. Harleysville claims that it was induced to approve the settlement between plaintiff and the Pasterlaks when, in fact, plaintiff had already destroyed its subrogation rights against them. If that contention is correct, plaintiff is not entitled to receive UIM benefits. See Rutgers Cas. v. Vassas, supra, 139 N.J. at 175-76, 652 A.2d 162; Rivers v. Allstate Ins. Co., 312 N.J.Super. 379, 386, 711 A.2d 974 (App.Div.1998).
This argument, however, ignores the certification filed by plaintiff's first attorney, Ippolito, that he and the Pasterlaks' attorney marked the case settled on condition that Harleysville approved the settlement. In essence, plaintiff contends that he preserved Harleysville's right to determine if it wished to pursue the Pasterlaks, and the dismissal order was entered by mistake. The fact that neither the release nor the stipulation of dismissal with prejudice was signed until after Harleysville approved the settlement facially supports plaintiff's contention. While we take no position on the merits of this issue, we note that an otherwise final order is subject to being vacated for sufficient reasons pursuant to R. 4:50-1. The question of whether the January order should be vacated under the circumstances was properly before the trial court but not decided. Since Harleysville's claim of prejudice was based upon the destruction of its subrogation right against the Pasterlaks further inquiry into the facts and circumstances surrounding the entry of the order is imperative. Clearly, Strichek's recollection of the terms of the settlement is relevant.
We, therefore, remand the matter to the Law Division for a determination as to whether the order of January 10, 1994, should be vacated. The trial court may undertake whatever additional proceedings it deems necessary to achieve a proper disposition of that issue. If the order is vacated, the trial court should direct the parties to proceed to arbitration. If the *782 order is not vacated, the plaintiff's complaint should be dismissed. We do not retain jurisdiction.