284 N.J. Super. 337 (1994)
665 A.2d 394
ARLENE ARENSON AND MARVIN ARENSON, PLAINTIFFS,
v.
AMERICAN RELIANCE INSURANCE CO. AND/OR VIC BROTHERS AS SUCCESSOR TO AMERICAN RELIANCE INS. CO., AND AETNA CASUALTY & SURETY CO., DEFENDANTS.
Superior Court of New Jersey, Law Division Camden County.
Decided February 25, 1994.
*339 Gary D. Ginsberg, for plaintiffs.
Timothy M. Crammer, for defendant Aetna Casualty & Surety Co. (Horn, Goldberg, Gorny, Daniels, Paarz, Placher & Weiss, attorneys).
Daniel A. Griffith, for defendant VIC Brothers (Marshall, Dennehey, Warner, Coleman & Goggin, attorneys).
ORLANDO, J.S.C.
This written decision supplements and amplifies the oral opinion which I have recently rendered.
The resolution of the case presently before this court requires an analysis of the effect which the 1987 amendments to the Comparative Negligence Act, N.J.S.A. 2A:15-5.3, had on an injured claimant's right to recover benefits pursuant to an underinsured motorist (UIM) endorsement.
The underlying facts are not in dispute. On September 26, 1988, the plaintiff, Arlene Arenson, received serious injuries as a result of a motor vehicle collision. At the time of the collision she was a passenger in a car owned by herself and driven by her daughter, Beth Levin. The vehicle in which she was riding was struck by an automobile being operated by Francis Kelleher as it made a left hand turn in front of her motor vehicle. A third party suit was instituted against both Kelleher and Levin. Kelleher was insured by Selective Insurance Company (Selective) with a policy that had limits of $50,000. Levin was insured by two policies issued to her parents, the plaintiffs in this action. One policy was issued by American Reliance Insurance Company (American) and *340 had policy limits of $500,000. The other was issued by Aetna Life and Casualty Insurance Company (Aetna) and also had policy limits of $500,000.
The claims against Kelleher and Levin were settled prior to trial. Selective paid its policy limits of $50,000 on behalf of Kelleher. American paid $15,000 on behalf of Levin. At the time of settlement it was stipulated by all parties, including the parties to this action, that Kelleher was 80% at fault and Levin was 20% at fault. Thereafter, plaintiff demanded arbitration pursuant to her UIM endorsements under both the American policy and the Aetna policy. The American policy had UIM limits of $250,000 and the Aetna policy had UIM limits of $500,000. Defendants refused to name an arbitrator on the ground that plaintiff was not entitled to UIM benefits. Plaintiff instituted this action to compel arbitration. The case now comes before the court upon cross-motions for summary judgment.
Defendants contend that a plaintiff cannot recover UIM benefits if the limits of liability under the policies insuring the tortfeasors exceed the limits of liability under the UIM endorsements. In this particular case they assert that because all parties have stipulated both Levin and Kelleher were tortfeasors, and because the liability limits of the policy insuring Kelleher ($50,000 under the Selective policy) and the policies insuring Levin ($500,000 under the American policy and 500,000 under the Aetna policy) exceed the UIM limits under the American policy ($250,000) and the Aetna policy ($500,000), plaintiff is not entitled to UIM arbitration.
Plaintiff, on the other hand, contends that because the UIM limits, here $750,000, exceed the limits of one tortfeasor's policy, i.e., the Selective Policy insuring Kelleher with limits of $50,000, and because the total amount received by way of settlement ($65,000) does not exceed her UIM limits ($750,000), she is entitled to arbitration pursuant to her UIM endorsement.
*341 The circumstances under which an insured is entitled to UIM benefits are delineated in N.J.S.A. 17:28-1.1(e)(1) which states in part:
For the purpose of this section, (1) "underinsured motorist coverage" means insurance for damages because of bodily injury and property damage resulting from an accident arising out of the ownership, maintenance or use of an underinsured motor vehicle. Underinsured motorist coverage shall not apply to an uninsured motor vehicle. A motor vehicle is underinsured when the sum of limits of liability under all bodily injury and property damage liability bonds and insurance policies available to a person against whom recovery is sought for bodily or property damage is, at the time of the accident, less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy held by the person seeking that recovery. A motor vehicle shall not be considered an underinsured motor vehicle under this section unless the limits of all bodily injury liability insurance or bonds applicable at the time of the accident have been exhausted by payment of settlements or judgments. The limits of underinsured motorist coverage available to an injured person shall be reduced by the amount he has recovered under all bodily injury liability insurance or bonds ...
There are three leading cases interpreting this statute in situations where UIM benefits are sought when the underlying collision involved multiple alleged tortfeasors. In Nikiper v. Motor Club of America Cos., 232 N.J. Super. 393, 557 A.2d 332 (App.Div. 1989) certif. denied 117 N.J. 139, 564 A.2d 863 (1989), the plaintiff sustained serious injuries as a result of a motor vehicle collision involving three vehicles. It was stipulated that the driver of her motor vehicle was not negligent. The carrier insuring one driver paid its policy limits of $50,000 and the carrier insuring the remaining driver paid its policy limits of $100,000. The plaintiff had $100,000 in UIM coverage. She instituted an action for UIM coverage on the theory that the driver with the $50,000 policy was underinsured. The Appellate Division determined that the vehicle carrying the $50,000 liability coverage was an underinsured motor vehicle, stating:
Since the Giletto car had a liability insurance policy of $50,000 and the Nikiper car had UIM coverage of $100,000 with MCA, the Giletto car clearly was "underinsured" within the definition in the first sentence quoted above.

Id. at 398, 557 A.2d 332.
The court, however, determined that the plaintiff was not entitled to UIM coverage because the $150,000 she recovered from the *342 two tortfeasors exceeded her UIM limits of $100,000. The court reasoned that this result was mandated by the final sentence of N.J.S.A. 17:28-1.1(e) which reads as follows:
"The limits of underinsured motorist coverage available to an injured person shall be reduced by the amount he has recovered under all bodily injury liability insurance or bonds ..."
In Gold v. Aetna Life and Casualty Ins. Co., 233 N.J. Super. 271, 558 A.2d 854 (App.Div. 1989), the court considered the application of N.J.S.A. 17:28-1.1(e) to a case in which the only alleged tortfeasor with liability limits greater than the insured's UIM limits had paid less than his liability limits, and consequently, the total settlement was less than the insured's UIM limits. In Gold the plaintiff was injured in a motor vehicle accident involving three other vehicles. Two vehicles had $25,000 coverage each. The remaining driver had $300,000 policy limits. The plaintiff negotiated a settlement with the three drivers for the total sum of $112,500. The driver with the $300,000 policy settled for $70,000 and the other two drivers settled for $20,000 and $22,500, respectively. The insured had UIM limits of $250,000 and sought UIM coverage after settlement of his third party claims contending that his damages exceeded $112,500. The carrier denied the claim, contending that the total liability limits of the persons against whom claims were made exceeded the plaintiff's UIM coverage. The court concluded that the availability of UIM coverage depended upon the policy limits of actual tortfeasors. The court ruled that the settlement of a claim against a driver does not bar the insured from a UIM arbitration as to whether or not the settling motorist was an actual tortfeasor. Critical to the court's decision was its analysis of the term "available" as used in N.J.S.A. 17:28-1.1(e). The court stated:
Thus, we hold that when the statute, N.J.S.A. 17:28-1.1(e), speaks of "available" insurance coverage, it plainly refers to that of persons who are actual responsible tortfeasors and not that of those who may have been "involved" in the accident without being liable under the law. To rule otherwise would lead to the result that underinsured coverage would be eliminated whenever entirely blameless persons involved in an accident happen to be heavily insured.

Id. at 276, 558 A.2d 854.
*343 The court ruled that plaintiff would be entitled to UIM benefits if an arbitrator concluded that the settling defendant was not an actual tortfeasor.
A similar result was reached by the court in Prudential Property and Casualty Insurance Company v. Kress, 241 N.J. Super. 81, 574 A.2d 482 (App.Div. 1990). The plaintiff was a passenger in a motor vehicle that was struck by another automobile. The plaintiff recovered the policy limits of $50,000 from the second motorist's carrier. The host driver had a policy limit of $100,000. The plaintiff settled his claim against the driver for $20,000. The plaintiff had UIM coverage of $100,000 and instituted an action to compel UIM arbitration. The court determined that the facts presented by the case before it were identical to those that arose in Gold, supra. In citing Gold with approval, the court determined that the insured was entitled to have an arbitrator determine whether the host driver had any legal responsibility for the collision and, if not, to determine whether the insured's damages exceeded his recovery in the personal injury action.
In deciding the present case it is of critical importance to note that the collisions which gave rise to the claims in Gold, supra, and Kress, supra, were governed by the Comparative Negligence Act as it existed prior to December 18, 1987. The law as it then existed provided that any tortfeasor was answerable to an injured party for that person's full amount of damages regardless of the percent of liability of the tortfeasor. See N.J.S.A. 2A:15-5.3 (prior to L. 1987 c.325). Thus, the entire liability limits of any tortfeasor were "available" to cover any injured claimant's damages. Therefore, if the driver of the vehicle covered by the $300,000 policy in Gold, supra, was determined to be 1% negligent, his entire policy limits of $300,000 was "available" to cover plaintiff's damages. (This assumes, of course, that plaintiff himself was not negligent).
The amendments to the Comparative Negligence Act which became effective on December 18, 1987, radically altered the extent to which tortfeasors may be compelled to cover an injured *344 party's damages. The statute, N.J.S.A. 2A:15-5.3 now reads as follows:
Except as provided in subsection d of this section, the party so recovering may recover as follows:
a. The full amount of the damages from any party determined by the trier of fact to be 60% or more responsible for the total damages.
b. The full amount of economic damages plus the percentage of non-economic damages directly attributable to that party's negligence from any party determined by the trier of fact to be more than 20% but less than 60% responsible for the total damages.
c. Only that percentage of the damages directly attributable to that party's negligence from any party determined by the trier of fact to be 20% or less responsible for the total damages.
Therefore, under the hypothetical set forth above where it was posited that the driver in Gold, supra, with the $300,000 policy was found to be 1% at fault, the plaintiff, under the statute in its present form, could only recover 1% of his damages from that driver. If his damages were determined to be $300,000 only 1% or $3,000 of the tortfeasor's policy would be "available" to him.
In the present case, where all parties have stipulated that Ms. Levin is 20% at fault, Ms. Arenson may only recover 20% of her damages from Ms. Levin. A determination of Ms. Arenson's total damages needs to be made in order to ascertain the extent to which Ms. Levin's liability carriers would potentially be required to respond to Ms. Arenson's claims. Ms. Arenson only has "available" to her from the liability policies covering Levin, 20% of her damages due to the changes in the Comparative Negligence Act. I therefore determine that, for motor vehicle collisions occurring on or after December 18, 1987, in which there are claims against multiple parties, an insured is entitled to arbitration pursuant to an UIM endorsement if the available UIM limits are greater than any one alleged tortfeasor's liability limits, and the total amount received by way of settlement or judgment is less than the insured's UIM limits. The task of the arbitrators will be to determine the insured's full damages and the percentage of liability of all tortfeasors. If the amount received by way of settlement or judgment equals or exceeds the total damages, there *345 will be no recovery under the UIM endorsement. If the amount received is less than the total damages, the next step will be to determine the extent to which each tortfeasor's liability policy was "available" to the claimant. This is done by calculating the extent to which each tortfeasor's liability carrier would have been required to respond in damages based upon the assessment of the claimant's total damages, and the extent of each tortfeasor's responsibility therefor, as set forth under the Comparative Negligence Act N.J.S.A. 2A:15-5.3. The UIM carrier will receive credit for the amount which the claimant could have received from each tortfeasor's carrier, or did receive, whichever is greater.
This approach is consistent with the purpose underlying mandatory UIM coverage. Judge Pressler in Longworth v. Van Houten, 223 N.J. Super. 174, 538 A.2d 414 (App.Div. 1988), delineated the rationale for the UIM endorsement in motor vehicle policies when she stated:
The predicate of the 1983 amendments was the Legislature's evident perception that in terms of obtaining an adequate recovery from a negligent driver, the victim, especially one sustaining serious injuries, is placed at financial risk not only by uninsured drivers but also by underinsured drivers, typically drivers with the minimum liability coverage of $15,000/30,000 permitted by the statute.

Id. 538 A.2d at 416.
The procedure set forth above permits a seriously injured party who has purchased increased UIM coverage to receive the benefits of that coverage and thus avoid financial risk. It also assures that the UIM carriers will receive appropriate credit for amounts recovered or recoverable from the liability carriers, whichever is greater.
The approach is also consistent with the court's decision in Nikiper v. Motor Club of America Cos., supra. It is further consistent with the court's concern in Gold, supra, about eliminating underinsured motorist coverage for an individual who happens to be involved in a motor vehicle collision with a blameless driver who is heavily insured. To adopt defendant's position in this case would eliminate underinsured motorist coverage for one who is involved in a collision with a heavily insured driver who is minimally *346 at fault and therefore, only obligated to pay a fraction of plaintiff's total damages.
Applying the methodology set out above to the case at bar: because plaintiff's UIM limits ($750,000) exceed Kelleher's liability limits ($50,000) and because the total amount received by way of settlement ($65,000) is less than the UIM limits ($750,000) plaintiff is entitled to arbitration. The parties have already stipulated Levin to be 20% at fault and Kelleher 80%. Therefore, the arbitrators will determine the total amount of the plaintiff's damages. If the damages are $65,000 or less there will be no UIM recovery. If the damages are greater than $65,000 the UIM carriers will receive credit for the $50,000 paid on behalf of Kelleher and 20% of the total damages (Levin's share) suffered by plaintiff, or $15,000 (the amount paid by American), whichever is greater.
For example, if the total damages are determined to be $70,000, the carriers will receive credit for the $50,000 received from Kelleher's carrier, and because 20% of $70,000 (which is $14,000) is less than the amount received from American, the carriers will receive credit for the amount actually received by way of settlement, or $15,000. If, however, the damages are determined to be $200,000, the UIM carriers will receive credit for the $50,000 paid by Selective for Kelleher, plus 20% of $200,000, or $40,000, which was the amount "available" under Levin's policies.
The carriers are directed to name an arbitrator within thirty (30) days.