**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3087-19T2

ASTIN CIVITANO and
TREY CIVITANO,

     Plaintiffs-Respondents,

v.

JASON FONTAINE, JOYCE
FONTAINE, LIBERTY
MUTUAL INSURANCE, and
BLU ALEHOUSE,

     Defendants,

and

NEW JERSEY MANUFACTURERS
INSURANCE,

     Defendant-Appellant,

TALIA BELLE and RUSSELL
ZUKOWSKI,

     Plaintiffs,

v.

JASON FONTAINE AND
BLU ALEHOUSE,

        Defendants.

_____

Argued December 15, 2020 – Decided January 12, 2021

Before Judges Yannotti, Haas and Mawla.

On appeal from the Superior Court of New Jersey, Law
Division, Passaic County, Docket Nos. L-0283-18 and
L-4437-16.

Daniel J. Pomeroy argued the cause for appellant
(Pomeroy, Heller, Ley, DiGasbarro & Noonan, LLC,
attorneys; Daniel J. Pomeroy and Karen E. Heller, on
the briefs).

Gregory D. Shaffer argued the cause for respondents
(Brandon J. Broderick, LLC, attorneys; Gregory D.
Shaffer, on the brief).

PER CURIAM

New Jersey Manufacturers Insurance Company (NJM) appeals from a

consent order of judgment entered in this matter on February 26, 2020, and

challenges an order entered by the trial court on April 29, 2019, which denied

its motion for summary judgment, and an order dated June 26, 2019, which

denied its motion for reconsideration. We reverse.

I.

On November 24, 2016, Astin Civitano, Trey Civitano, Talia Belle, and Russell Zukowski were passengers in a vehicle owned by Joyce Fontaine and driven by Jason Fontaine.[1] Jason was allegedly operating the vehicle while intoxicated and driving at a high rate of speed. The vehicle went off the road, jumped the curb, and struck a boulder and tree. Astin, Trey, and the other passengers allegedly suffered personal injuries in the collision.

Jason was operating a vehicle insured under an automobile policy of insurance issued by Liberty Mutual Insurance Company (Liberty Mutual) to Joyce. The Liberty Mutual policy had liability limits of $250,000 per person and $500,000 per accident. Joyce was a named insured under the policy, and Jason was listed on the policy as a driver of the insured vehicle.

Jason also was covered under his own automobile insurance policy which was issued by State Farm Indemnity Company (State Farm). This policy provided coverage of $100,000 per person and $300,000 per accident. Astin was insured under an automobile insurance policy issued by NJM, which provided uninsured and underinsured motorist (UIM) coverage with a limit of $300,000 for each accident.

---

[1] Because some of the persons involved have the same surnames, we refer to these individuals by their first names.

A-3087-19T2

In September 2017, Astin and Trey filed a complaint in the Law Division, Morris County, and named Jason, Joyce, Liberty Mutual, NJM, and Blu Alehouse (BA) as defendants. In the first count of the complaint, plaintiffs alleged Jason operated the vehicle with Joyce's permission and consent. They claimed Jason drove the vehicle negligently and recklessly, which caused the collision in which they were injured.

In count two, plaintiffs sought UIM coverage under the Liberty Mutual policy, and in count three, Astin sought UIM coverage under the NJM policy. In count four, plaintiffs asserted a claim against BA under the New Jersey Licensed Alcoholic Beverage Server Fair Liability Act (the Dram Shop Act), N.J.S.A. 2A:22A-1 to -7, claiming that BA negligently continued to serve Jason alcoholic beverages "long beyond the point of his visible inebriation."

Belle and Zukowski filed a separate action in the Law Division, Passaic County, against Jason and NJ Ale House III, LLC (trading as BA), which was docketed as PAS-L-4437-16. This case was transferred from Morris County to Passaic County, docketed as PAS-L-0283-18, and consolidated with the Belle/Zukowski matter. On December 1, 2017, the trial court entered an order in the Belle/Zukowski action permitting Liberty Mutual to deposit its policy limits with the court.

4

After the completion of discovery, NJM filed a motion for summary judgment on Astin's claim for UIM coverage under its policy. Astin opposed the motion. The motion judge entered an order dated April 29, 2019, which denied NJM's motion. The order stated that NJM's motion was denied because the UIM coverage available under Astin's NJM policy was greater than the liability coverage provided under Jason's State Farm policy. The order also stated that Joyce's Liberty Mutual policy did not provide "available" coverage because Joyce was not an "actual responsible tortfeasor" under N.J.S.A. 17:28-1.1(e).

NJM thereafter filed a motion for reconsideration of the court's April 29, 2019 order. NJM argued that the court's ruling was contrary to N.J.S.A. 17:28-1.1(e) because the coverage provided under the Liberty Mutual policy was available to address any liability assessed against Jason. NJM noted that the policy limits had been deposited with the court for that purpose. Astin opposed the motion.

In June 2019, the judge heard oral argument on the motion and reserved decision. During oral argument, the judge stated that the claims against BA would be dismissed. On June 26, 2019, the judge issued an order denying NJM's motion. The judge filed a statement of reasons, which stated in pertinent part:

A-3087-19T2

On the date of the subject accident, Jason was the named insured under his automobile policy that was purchased through State Farm. . . . Joyce, Jason's mother, had her own separate automobile insurance policy with Liberty Mutual. It is important to note that Jason was not a named insured under his mother's policy. Joyce's policy is not to be considered available insurance coverage for the purposes of determining if UIM applies because Joyce was <u>not an actual tortfeasor</u>. This court agrees with counsel for Civitano in that the term "available" in the context of [N.J.S.A.] 17:28-1.1(e) refers to actual responsible tortfeasors. It is undisputed that Joyce is absolutely blameless for the accident. As such, her policy shall not be considered as "available" in determining whether UIM coverage with NJM is triggered.

On February 26, 2020, Astin and NJM agreed to the entry of a consent order of judgment. The order states, among other things, that pursuant to a settlement agreement, judgment was entered in favor of Astin in the amount of $157,500 and against NJM, subject to an appeal by NJM on the issue of the availability of UIM coverage under its policy. The order also states that it was the final order in this case "as to all parties" and the orders of April 29, 2019, and June 26, 2019, may be appealed "as of right pursuant to [<u>Rule</u>] 2:2-3." NJM's appeal followed.

II.

Initially, we note there is a question as to whether the February 26, 2020 order of judgment is a final judgment that is appealable as of right pursuant to

Rule 2:2-3(a)(1). To be appealable as of right, the judgment or order must resolve all issues as to all parties. N.J. Schs. Constr. Corp. v. Lopez, 412 N.J. Super. 298, 308 (App. Div. 2010).

This rule of finality applies to all parties and all claims in actions that have been consolidated. Prudential Prop. & Cas. Ins. v. Boylan, 307 N.J. Super. 162, 165 n.2 (App. Div. 1998). If an order is not a final judgment, a party may only appeal by leave granted pursuant to Rule 2:2-4 and Rule 2:5-6(a). Janicky v. Point Bay Fuel, Inc., 396 N.J. Super. 545, 550-51 (App. Div. 2007) (Janicky I).

As stated previously, the trial court consolidated this case with the Belle/Zukowski lawsuit. In the case information statement filed with its notice of appeal, NJM asserted that all of the issues as to all of the parties have been resolved. Moreover, the February 26, 2020 order states that it is final as to all parties. Therefore, we will assume all claims against all other parties to these consolidated matters have been resolved.

Nevertheless, the question remains as to whether the February 26, 2020 order is a final appealable order under Rule 2:2-3(a)(1). As noted, the order enters judgment against NJM in favor of Astin in the amount of $157,500, but provides that the parties agree to litigate the question of the availability of UIM

7

coverage under the NJM policy through the exhaustion of appeals, as permitted under the court rules. The order states:

> [t]he judgment . . . will be paid to plaintiff within [thirty] days of exhaustion of all appeals and receipt of all necessary closing papers if the final decision holds that plaintiff is entitled to NJM UIM benefits under the terms of the policy, facts and record below, and applicable law. If the final decision holds that plaintiff is not entitled to UIM benefits, no payment will be due . . . .

Generally, an order entered with the consent of the parties is not appealable as of right under Rule 2:2-3(a)(1). O'Loughlin v. Nat'l Cmty. Bank, 338 N.J. Super. 592, 602 (App. Div. 2001) (citing Winberry v. Salisbury, 5 N.J. 240, 255 (1950)). "This is because the rule allowing an appeal as of right from a final judgment contemplates a judgment entered involuntarily against the losing party." Jacobs v. Mark Lindsay & Son Plumbing & Heating, Inc., 458 N.J. Super. 194, 205 (App. Div. 2019) (quoting Lopez, 412 N.J. Super. at 309).

Even where a judgment entered by consent expresses a party's desire to preserve the right to appellate review, "the practice is disapproved of because it preempts the appellate court's authority to decide whether to hear an interlocutory appeal and it 'foist[s] jurisdiction' upon the appellate court." Lopez, 412 N.J. Super. at 309 (alternation in original) (quoting Caggiano v. Fontoura, 354 N.J. Super. 111, 124 (App. Div. 2002)). If a party includes a

provision in a consent order that preserves its right to appeal, this "does not automatically make the order appealable." Jacobs, 458 N.J. Super. at 205 (quoting Lopez, 412 N.J. Super. at 309).

"There is, however, an exception to this general rule against appealability where parties to a consent judgment reserve the right to appeal an interlocutory order 'by providing that the judgment would be vacated if the interlocutory order were reversed on appeal[.]'" Lopez, 412 N.J. Super. at 309 (alternation in original) (quoting Janicky v. Point Bay Fuel, Inc., 410 N.J. Super. 203, 207 (App. Div. 2009) (Janicky II)). See also Whitfield v. Bonanno Real Estate Grp., 419 N.J. Super. 547, 551 n.3 (App. Div. 2011) (citing Janicky II and observing that a consent judgment may reserve the right to appeal an interlocutory order by providing the judgment will be vacated if the order is reversed on appeal).

Here, the February 26, 2020 order expressly preserved NJM's right to appeal the orders of April 29, 2019, and June 26, 2019. The order also provides that no payment will be due on the judgment in the event this court were to hold that Astin is not entitled to UIM benefits under the NJM policy. We therefore conclude the order is a final judgment that may be appealed as of right pursuant to Rule 2:2-3(a)(1).

III.

9

On appeal, NJM argues that the trial court erred by denying its motion for summary judgment. NJM contends the judge erred by finding that the amount of liability coverage available to Jason, the alleged tortfeasor, did not exceed the UIM limits under Astin's NJM policy. NJM argues that the judge's ruling is inconsistent with New Jersey's UIM statutory scheme.

When reviewing an order granting or denying summary judgment, we apply the standard under Rule 4:46-2(c) that the trial court applies when ruling on the motion. Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (citing Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). Summary judgment should be granted when the evidence before the court on the motion "show[s] that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

The interpretation of an insurance contract is an issue of law, subject to de novo review. Sealed Air Corp. v. Royal Indem. Co., 404 N.J. Super. 363, 375 (App. Div. 2008) (citing Fastenberg v. Prudential Ins. Co. of Am., 309 N.J. Super. 415, 420 (App. Div. 1998)). Moreover, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) (citations omitted).

"The circumstances under which an insured with UIM coverage is entitled to recovery are set forth in N.J.S.A. 17:28-1.1(e)[(1)]." Prudential Prop. & Cas. Ins. Co. v. Kress, 241 N.J. Super. 81, 84 (App. Div. 1990). The statutory language of N.J.S.A. 17:28-1(e)(1) is "clear and must be applied as written." Nikiper v. Motor Club of Am. Cos., 232 N.J. Super. 393, 399 (App. Div. 1989). N.J.S.A. 17:28-1.1(e)(1) defines UIM coverage and provides in relevant part

> [a] motor vehicle is underinsured when the sum of the limits of liability under all bodily injury and property damage liability bonds and insurance policies available to a person against whom recovery is sought for bodily injury or property damage is, at the time of the accident, less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy held by the person seeking that recovery.

Here, it is undisputed that, at the time of the accident, the applicable limits for UIM coverage afforded under Astin's NJM policy was $300,000. Moreover, Jason, the person against whom Astin sought recovery for bodily injuries sustained in the accident, had liability coverage of $100,000 under his State Farm policy. Jason also was a named driver under Joyce's Liberty Mutual policy, and he had an additional $250,000 in liability coverage under that policy.

Because "the sum of the limits of liability" under the policies "available" to Jason was $350,000, and it exceeded the UIM coverage of $300,000 available to Astin under the NJM policy, NJM was not required to provide Astin UIM

11

coverage. Therefore, the judge erred by denying NJM's motion for summary judgment on the UIM claim.

Astin contends, however, that the trial court correctly found that in determining whether Jason's liability coverage was less than the UIM coverage provided under the NJM policy, the court could not consider the $250,000 liability coverage available to Joyce under the Liberty Mutual policy because she is not an actual responsible tortfeasor with responsibility for the accident.

In his decision on NJM's motion for reconsideration, the judge found that Joyce's policy did not provide available insurance coverage for purposes of determining if Astin was entitled to UIM coverage under the NJM policy. In support of that determination, the judge cited three cases: Arenson v. Am. Reliance Ins. Co., 284 N.J. Super. 337 (Law Div. 1994); Calabrese v. Selective Ins. Co. of Am., 297 N.J. Super. 423 (App. Div. 1997); and Gold v. Aetna Life & Cas. Ins. Co., 233 N.J. Super. 271 (App. Div. 1989).

In Arenson, the plaintiff was injured when the car in which she was riding was struck by another car. 284 N.J. Super. at 339. The plaintiff's daughter, who was driving the plaintiff's car, and another driver were allegedly responsible for the accident. Ibid. The plaintiff's daughter had liability coverage under two

policies, which both provided $500,000 in coverage. Id. at 339-40. The other driver was insured under a policy with liability limits of $50,000. Id. at 339.

The parties stipulated that the plaintiff's daughter was 20% at fault, and the other driver 80% at fault for the accident. Id. at 340. The insurer for the other driver paid $50,000, and one of the insurers for the plaintiff's daughter paid $15,000. Ibid. The plaintiff asserted a claim for UIM coverage under the two policies that provided liability coverage for her daughter. Ibid. The insurers contended that the plaintiff could not recover UIM benefits because the limits of liability under the policies insuring the tortfeasors exceeded the limits of liability under the UIM endorsements. Ibid.

The Law Division applied the Comparative Negligence Act, N.J.S.A. 2A:15-5.3, and determined that for motor vehicle collisions that occur after the effective date of the Act, in which there are claims against multiple parties, "an insured is entitled to arbitration pursuant to an UIM endorsement if the available UIM limits are greater than any one alleged tortfeasor's liability limits, and the total amount received by way of settlement or judgment is less than the insured's UIM limits." Id. at 344.

Here, the trial court's reliance upon Arenson was misplaced. This case does not involve an accident that involves claims against multiple parties. The

A-3087-19T2

parties agree that Jason was the only responsible tortfeasor. Under N.J.S.A. 17:28-1.1(e), the sole issue to be decided is whether the sum of the limits of liability available to Jason under the insurance policies at the time of the accident was less than the limits of UIM coverage available to Astin, the party seeking recovery from him.

The trial court's reliance upon Calabrese also was misplaced. In that case, the plaintiff was operating a motor vehicle owned by her daughter. 297 N.J. Super. at 427. Three other family members were passengers in the vehicle. Ibid. The vehicle was struck head-on by another vehicle. Ibid. The tortfeasor's vehicle was insured under an insurance policy with liability limits of $100,000 per person and $300,000 per accident. Ibid. The four injured occupants of the plaintiff's car instituted lawsuits, which resulted in settlements that consumed the tortfeasor's liability limits. Ibid.

The vehicle the plaintiff had been operating was insured under a policy with UIM coverage of $300,000. Ibid. The plaintiff also had another policy that provided $300,000 in UIM coverage. Ibid. The plaintiff, her spouse, and two passengers in the plaintiff's car sought UIM coverage. Ibid. An arbitrator determined that the plaintiff and her spouse had sustained injuries of $345,000, while the other passengers sustained damages of $250,000, and $180,000,

A-3087-19T2

respectively.  Id. at 427-28.  The insurer denied the UIM claims because the tortfeasor had liability coverage of $300,000, which was the same as the liability coverage available under its policies.  Id. at 428.

We held that because the $300,000 per person UIM coverage was greater than the liability coverage of $100,000 per person available under the tortfeasor's policy, "the tortfeasor was underinsured." Id. at 432. Calabrese does not apply in this matter because NJM provided Astin with UIM coverage of $300,000, which was less than the $100,000 per person liability coverage available to Jason under the State Farm policy, and the $250,000 per person liability coverage available to him under the Liberty Mutual policy.

In addition, our decision in Gold does not support the trial court's decision. In that case, three drivers and the plaintiff were involved in a multiple-vehicle collision. 233 N.J. Super. at 273. The plaintiff had $250,000 in UIM coverage. Ibid. Two of the other drivers each had $25,000 in liability coverage, and the third driver had liability coverage of $300,000. Ibid.

The insurers for the drivers with $25,000 in coverage contributed almost the full amounts of their policy limits to a settlement. Ibid. The insurer for the driver with $300,000 in coverage contributed $70,000 to the settlement. Ibid. The plaintiff then sought UIM benefits, claiming his damages exceeded the

$112,500 he received in the settlements with the other drivers. Ibid. The plaintiff's insurer denied the UIM claim on the ground that the sum of the liability coverages of the other drivers exceeded the plaintiff's UIM coverage. Id. at 274.

We held, however, that the availability of UIM coverage depends upon the aggregate liability of actual tortfeasors, and the settlement of a claim against an alleged tortfeasor does not preclude the insured from seeking a determination that the settling party was not responsible for the accident. Id. at 276-77. We noted that the phrase "available insurance coverage" in N.J.S.A. 17:28-1.1(e)

> plainly refers to that of persons who are actual responsible tortfeasors and not that of those who may have been "involved" in the accident without being liable under the law. To rule otherwise would lead to the result that underinsured coverage would be eliminated whenever entirely blameless persons involved in an accident happen to be heavily insured.
>
> [Id. at 276.]

Here, there is no claim that Joyce was "involved" in the accident or otherwise an "actual responsible tortfeasor." Although Jason was not a named insured under Joyce's Liberty Mutual policy, he was identified in the policy as a driver of the insured vehicle. Nothing in the record indicates Jason was not entitled to coverage under the policy. Therefore, liability coverage of $250,000

per person under the Liberty Mutual policy was "available" to Jason for purposes of determining whether Astin was entitled to UIM coverage under the NJM policy.

## IV.

In its response to NJM's appeal, Astin argues that the sole issue to be decided is whether Joyce was an actual responsible tortfeasor. She contends that since Joyce had no responsibility for the subject accident, the liability coverage under her Liberty Mutual policy is not "available" to Jason, the sole responsible tortfeasor.

NJM concedes that Joyce had no responsibility for the accident. However, as NJM argues, this does not address the question of whether liability coverage under the Liberty Mutual policy is "available" to Jason for purposes of determining whether Astin was entitled to UIM coverage.

As NJM points out, although Joyce purchased the Liberty Mutual policy under which she is a named insured, it undoubtedly provides liability coverage to Jason under the circumstances of this case, where he was identified in the policy as a driver and he was driving the vehicle insured under the policy at the time of the accident. There is no claim that Jason was not a permissive driver of the vehicle. We also note that Liberty Mutual did not disclaim coverage for

17

the claims against Jason, and it deposited its full policy limits with the court, apparently to address those claims.

Astin further argues that the Liberty Mutual policy indicates that it did not provide "double" or "excess" coverage for Jason. She contends that if Liberty Mutual intended to provide such coverage, Jason would have been identified in the policy as a named insured. She therefore argues that NJM cannot rely upon the Liberty Mutual policy as a basis for denying her UIM coverage.

We disagree. The record shows that Jason had his own policy, which was issued by State Farm. He also was entitled to liability coverage under his mother's Liberty Mutual policy as a permissive driver of a vehicle insured under that policy. This is not "double" or "excess" coverage.

Furthermore, considering Jason's liability coverage under both the State Farm and Liberty Mutual policies for purposes of determining Astin's eligibility for UIM coverage is consistent with the plain language of N.J.S.A. 17:28-1.1(e). The statute unambiguously requires the determination of UIM eligibility to be made based on the "sum" of the limits of all the liability policies available to the tortfeasor. Ibid.

Astin also suggests that considering the liability coverage available to Jason under both the State Farm and Liberty Mutual polices constitutes

impermissible "stacking." Again, we disagree. N.J.S.A. 17:28-1.1(c) states in relevant part that "[u]ninsured and [UIM] coverage provided for in this section shall not be increased by stacking the limits of coverage of multiple motor vehicles covered under the same policy of insurance nor shall these coverages be increased by stacking the limits of coverage of multiple policies available to the insured."

Thus, the concept of "stacking" pertains to the aggregation of UIM coverage limits under multiple policies. See Selective Ins. Co. of Am. v. Thomas, 179 N.J. 616, 621-22 (2004) (noting that under N.J.S.A. 17:28-1.1(c), "an insured cannot aggregate the limits of multiple UIM policies"). This case does not involve "stacking" of UIM coverage available under multiple policies.

We conclude the trial court erred by finding that Astin was entitled to UIM coverage under the NJM policy. The court therefore erred by denying NJM's motion for summary judgment on the UIM claim and denying its motion for reconsideration.

Reversed and remanded to the trial court for further proceedings in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3087-19T2