NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2020 CA 0802

ROCCO LATORRE

VERSUS

LUCAS CADE HUNTER, ENTERPRISE RENT A CAR AND MERCURY
INDEMNITY COMPANY OF AMERICA

Judgment Rendered:  FEB 2 2 2021

Appealed from the
Twenty-Second Judicial District Court
In and for the Parish of St. Tammany, Louisiana
Docket Number 2012-16091

Honorable Alan A. Zaunbrecher, Judge Presiding

*************

Brian E. Sevin, Sr.
Christopher J. Stahulak
Metairie, LA
    and
Thomas C. Cerullo
Metairie, LA

Randall L. Kleinman
New Orleans, LA

Donna Powe Green
Hattiesburg, MS

Counsel for Plaintiff/Appellant,
Rocco Latorre

Counsel for Defendant/Appellee,
Mercury Indemnity Company of America

Counsel for Defendant,
Enterprise Rent A Car, EAN Holdings, LLC

BEFORE: WHIPPLE, C.J., WELCH, AND CHUTZ, JJ.

**WHIPPLE, C.J.**

In this automobile accident case, plaintiff appeals the district court's January 15, 2020 judgment, which granted the motion for summary judgment filed by plaintiff's uninsured/underinsured motorist carrier and dismissed with prejudice plaintiff's claims against it. For the following reasons, we reverse in part, affirm in part, and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

Plaintiff, Rocco Latorre, a resident of New Jersey, filed suit in the district court to recover damages for injuries allegedly sustained in a November 25, 2011 automobile accident that occurred in St. Tammany Parish, Louisiana, when the vehicle driven by defendant, Lucas Cade Hunter, a resident of Mississippi, rear-ended plaintiff's vehicle. At the time of the accident, Hunter was driving a vehicle rented in Mississippi from Enterprise Leasing Company – South Central, LLC ("Enterprise Leasing"), and owned by EAN Holdings, LLC ("EAN"), a subsidiary of Enterprise Leasing. In the vehicle rental agreement, Hunter declined the supplemental liability insurance offered by Enterprise Leasing. Additionally, Hunter's automobile liability insurance policy with State Farm Mutual Automobile Company ("State Farm") had been cancelled prior to the date of the accident.

In his petition for damages, Latorre named as defendants Hunter; Enterprise Rent A Car; Enterprise Leasing; EAN; and Mercury Indemnity Company of America ("Mercury"), Latorre's uninsured/underinsured motorist (UM/UIM) carrier. Enterprise Rent A Car was later dismissed from the suit by motion for summary judgment, and Latorre then settled his claims with EAN; Enterprise Holdings, Inc., the parent company of Enterprise Leasing; and Enterprise Holdings, LLC, formerly known as Enterprise Rent-A-Car Company, for the sum of $2,000.00.

2

Thereafter, Mercury filed a motion for summary judgment, seeking to have Latorre's claims against it dismissed on the basis that Latorre had entered into the settlement without prior notice to Mercury, thereby destroying Mercury's subrogation rights. Specifically, Mercury contended that because Latorre is a citizen of New Jersey and the Mercury UM/UIM policy was issued in New Jersey, New Jersey law applied to the contractual relations between Mercury and Latorre. Mercury further asserted that under New Jersey law, Latorre's failure to advise Mercury, his UIM carrier, of a pending settlement with a tortfeasor precluded any UIM coverage under the policy.

Latorre opposed Mercury's motion and also filed a cross-motion for partial summary judgment, seeking judgment finding that Mercury was liable to provide the contracted-for UM coverage to Latorre for his injuries resulting from the accident in question. Latorre did not dispute in either his opposition to Mercury's motion for summary judgment or in his own cross-motion for partial summary judgment that he had settled his claims with EAN; Enterprise Holdings, Inc.; and Enterprise Holdings, LLC, without prior notice to Mercury. Rather, both in opposition to Mercury's motion for summary judgment and in support of his cross-motion for partial summary judgment, Latorre contended that: (1) at the time of the accident, Hunter was completely uninsured; and (2) the plain language of the Mercury policy did not require its insured to provide notice of settlement with completely uninsured tortfeasors in order to maintain coverage under the UM provisions of the policy. Latorre noted that Hunter's automobile liability policy with State Farm had been cancelled before the accident in question and that at the time Hunter leased the vehicle, he declined to purchase the supplemental liability insurance offered by Enterprise Leasing. Moreover, Latorre contended that under the specific terms of the vehicle rental agreement between Hunter and Enterprise Leasing, the only other potential source of liability coverage that might provide

3

liability coverage to renters, i.e., any coverage provided by EAN through its certificate of self-insurance, did not extend to Hunter because Hunter was intoxicated at the time of the accident. Thus, he contended that Hunter was completely uninsured at the time of the accident.

Latorre further asserted that the provision of the policy relied upon by Mercury to deny UM coverage required Latorre to notify Mercury of any tentative settlement only where the tortfeasor was *underinsured*, not where the settling tortfeasor was completely *uninsured*.[1] Thus, Latorre contended that his alleged lack of notice to Mercury of the settlement did not preclude him from seeking UM coverage under his Mercury policy. For these reasons, Latorre asserted that Mercury's motion for summary judgment should be denied and his motion for partial summary judgment should be granted.

Following a hearing on the motions, the district court signed a judgment dated January 15, 2020, granting Mercury's motion for summary judgment, denying Latorre's cross-motion for partial summary judgment, and dismissing with prejudice Latorre's claims against Mercury.

From this judgment, Latorre appeals. Through five assignments of error, Latorre contends that the district court erred in concluding that New Jersey law dictates that Latorre's failure to notify Mercury of a settlement with a third party voided Mercury's UM coverage, and, thus, erred in granting Mercury's motion for summary judgment and denying Latorre's motion for partial summary judgment where Hunter was not underinsured, but rather was completely **uninsured** due to

---

[1]Notably, the evidence of settlement filed by Mercury did not indicate that Latorre had settled his claims with Hunter.

his violation of the vehicle lease agreement by driving while intoxicated.[2]

## SUMMARY JUDGMENT PRECEPTS

A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Jones v. Anderson, 2016-1361 (La. App. 1st Cir. 6/29/17), 224 So. 3d 413, 417. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(A)(3). The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions.[3] LSA-C.C.P. art. 966(A)(4).

The burden of proof rests on the mover, who must show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(A)(3) & (D)(1). Only when the mover makes this showing does the burden shift to the opposing party to present evidence demonstrating a material factual issue remains. Action Oilfield Services, Inc. v. Energy Management Company, 2018-1146 (La. App. 1st Cir. 4/17/19), 276 So. 3d 538, 541-542.

However, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse

---

[2]The denial of a motion for summary judgment is an interlocutory judgment appealable only when expressly provided by law. However, where there are cross-motions involving the same issues, this court will review the denial of a motion for summary judgment in conjunction with the appeal of the granting of the cross-motion for summary judgment. See LSA-C.C.P. arts. 968, 1841, & 2083; Crowe v. Bio-Medical Application of Louisiana, LLC, 2014-0917, 2014-0918 (La. App. 1st Cir. 6/3/16), 208 So. 3d 473, 478 n.6, writ denied, 2017-0502 (La. 5/12/17), 219 So. 3d 1106.

[3]Nevertheless, the court shall consider any documents filed in support of or in opposition to the motion for summary judgment to which no objection is made. LSA-C.C.P. art. 966(D)(2).

party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden then shifts to the non-moving party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. LSA-C.C.P. art. 966(D)(1); Action Oilfield Services, Inc., 276 So. 3d at 542.

An insurer seeking to avoid coverage through summary judgment bears the burden of proving some exclusion applies to preclude coverage. Smith v. Moreau, 2017-0003 (La. App. 1st Cir. 6/2/17), 222 So. 3d 761, 765.

Appellate courts review evidence *de novo* under the same criteria that govern the district court's determination of whether summary judgment is appropriate. Crosstex Energy Services, LP v. Texas Brine Company, LLC, 2017-0895 (La. App. 1st Cir. 12/21/17), 240 So. 3d 932, 936, writ denied, 2018-0145 (La. 3/23/18), 238 So. 3d 963. Thus, appellate courts ask the same questions: whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Crosstex Energy Services, LP, 240 So. 3d at 936. Because it is the applicable substantive law that determines materiality, whether a particular issue in dispute is material can be seen only in light of the substantive law applicable to the case. Jones, 224 So. 3d at 417.

## ANALYSIS

In support of its motion for summary judgment, Mercury contended that the vehicle leased to and driven by Hunter, which was owned by EAN, was covered under a Certificate of Self-Insurance issued to EAN, by the State of Mississippi. According to Mercury, pursuant to Mississippi's Motor Vehicle Safety--Responsibility Law, Latorre had available up to $25,000.00 coverage from EAN, as the self-insured owner of the vehicle. See Miss. Code Ann. §§ 63-15-53, 63-15-4(2)(a), & 63-15-3(j); Enterprise Leasing Company-South Central Inc. v. Bardin, 8

6

So. 3d 866, 868-869 (Miss. 2009).[4] Mercury argued that Lattore's actions in settling his claims for $2,000.00 without first obtaining Mercury's consent or advising it of the impending settlement had the effect of leaving $23,000.00 in liability limits undisturbed and destroying Mercury's subrogation rights against that remaining sum. Thus, Mercury contended, under New Jersey law, which it argued applied to the contractual relationship between Latorre and Mercury, Latorre is precluded from any recovery against Mercury.

The Mercury policy included UM/UIM coverage, which was set forth in Part III, Coverage U of the policy. The UM/UIM provisions of the Mercury policy stated that Mercury would pay damages "for bodily injury or property damage an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle or an underinsured motor vehicle." (Emphasis in original removed).

In support of its summary judgment, Mercury relies on the following language in the section of the UM/UIM provisions entitled "Additional Duties" (hereinafter referred to as the "Additional Duties provision"), providing as follows:

---

[4] Mississippi Code Annotated section 63-15-53 provides, in pertinent part:

(1) Any person in whose name more than 25 motor vehicles are licensed may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the department as provided in subsection (2) of this section.
(2) The department may, in its discretion, upon the application of a person, issue a certificate of self-insurance when it is satisfied that such person is possessed and will continue to be possessed of ability to pay judgments obtained against such person.

Mississippi Code Annotated section 63-15-37(4) further provides:

Proof of financial responsibility when required under this chapter with respect to a motor vehicle or with respect to a person who is not the owner of a motor vehicle may be given by filing ... a certificate of self-insurance as provided in section 63-15-53, supplemented by an agreement by the self-insurer that, with respect to accidents occurring while the certificate is in force, he will pay the same judgments and in the same amounts that an insurer would have been obligated to pay under an owner's motor vehicle liability policy if it had issued such a policy to said self-insurer.

Pursuant to Miss. Code Ann. §§ 63-15-4(2)(a) and 63-15-3(j), every motor vehicle operated in the state of Mississippi shall have a motor vehicle liability insurance policy that covers the vehicle with liability limits of $25,000.00 for bodily injury to or death of one person in any one accident and in the amount of $50,000.00 for bodily injury to or death of two or more persons in any one accident.

2. A person seeking coverage under this Part must also promptly:

...

    b. Notify **us** in writing of a tentative settlement between the **insured** and the insurer of the **underinsured motor vehicle** and allow us 30 days to advance payment to that **insured** in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such underinsured vehicle. [Emphasis in original.]

According to Mercury, because Latorre failed to provide Mercury the required notice and thirty-day period to advance payment to him in order to preserve its rights, he violated the Additional Duties provision and, thus, is not entitled to UM/UIM coverage under the Mercury policy pursuant to New Jersey law.

Notably, under New Jersey law, an insured's failure, in violation of the provisions of the UIM policy, to provide notice to his UIM insurer of a settlement offer and an opportunity for the UIM insurer to pay the insured the amount of the settlement offer bars his action to recover UIM benefits. See Rutgers Casualty Insurance Company v. Vassas, 139 N.J. 163, 174-175, 652 A.2d 162, 167-168 (1995). On the other hand, in Louisiana, an insurer may not enforce a clause excluding UM/UIM coverage in the event of its insured's failure to obtain its consent before entering into a reasonable settlement with an underinsured tortfeasor and his insurer. See Bond v. Commercial Union Assurance Company, 407 So. 2d 401, 411 (La. 1981)(on rehearing); Wendling v. Chambliss, 2009-1422 (La. App. 1st Cir. 3/26/10), 36 So. 3d 333, 336.

Pursuant to the Louisiana Supreme Court case of Champagne v. Ward, 2003-3211 (La. 1/19/05), 893 So. 2d 773, 786, which, like the case herein, involved an accident that occurred in Louisiana causing injury to a resident of another state who was driving a vehicle covered by an insurance policy negotiated and issued in that other state, where we determine that there is a difference between Louisiana's UM law and the UM law of the foreign state, we must

8

conduct a choice-of-law analysis, as codified by LSA-C.C. arts. 3515 and 3537, to determine which state's law applies to the interpretation of the UM/UIM policy.

Louisiana Civil Code article 3515 provides as follows:

Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.

That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

Additionally, LSA-C.C. art. 3537 provides:

Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.

That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

As explained in Champagne, these conflict-of-laws provisions afford the balancing of competing interests between the involved states. Champagne, 893 So. 2d at 786.

Regarding the pertinent contacts of each state, Latorre admitted in his petition, which was submitted by Mercury in support of its motion for summary judgment, that he was domiciled in New Jersey. The Mercury policy, also submitted in support of Mercury's motion, was issued to Latorre in New Jersey and lists Latorre as having a New Jersey address and a New Jersey driver's license.

On the other hand, the only relevant contacts with Louisiana are that the accident occurred in Louisiana, and suit was filed in Louisiana.[5]

These contacts must be considered in light of the competing public policies and interests between the states of Louisiana and New Jersey. The purpose of Louisiana's UM legislation is to promote full recovery for innocent tort victims. Champagne, 893 So. 2d at 788. Factors supporting Louisiana's strong interest in promoting full recovery for innocent automobile accident victims include: (1) the economic interests involved, including costs of medical care (which are more likely to be paid if there is sufficient insurance); (2) the significant involvement of the facilities of the Department of Public Safety and Corrections and the judicial system; and (3) the fact that the issuing states of the insurance policy often have credit and reduction provisions in their UM coverage, thereby reducing limits and serving to prevent full recovery by the innocent accident victims. Champagne, 893 So. 2d at 788.

On the other hand, New Jersey has an interest in the regulation of its insurance industry and in the contractual obligations that are inherent parts thereof. The integrity of the contract is a substantial and real interest. As noted by the Louisiana Supreme Court in Champagne, each of the fifty has its own uniform system of regulations governing insurance strongly suggests this is a legitimate public purpose. Champagne, 893 So. 2d at 788. As such, courts of this state have often found that the state where the insurance policy was issued had a more substantial interest in applying its laws than the state where the accident occurred. See Champagne, 893 So. 2d at 789, Wendling, 36 So. 3d at 338-339, & Garces-Rodriguez v. GEICO Indemnity Company, 16-196 (La. App. 5th Cir. 12/21/16),

---

[5]As stated above, Hunter was a resident of Mississippi, and the vehicle rental agreement he entered into with Enterprise was confected in Mississippi. However, neither of those facts resolve or determine the issue of the competing interests of Louisiana and New Jersey with regard to interpretation of the Mercury UM/UIM policy.

10

209 So. 3d 389, 395.

After our *de novo* review of the facts of this case, we agree with the district court and conclude that New Jersey has a more substantial interest in the uniform application of its laws governing insurance contracts than Louisiana has in providing an insurance remedy to an out-of-state resident who was injured while in Louisiana. See Champagne, 893 So. 2d at 788. The application of Louisiana law to the insurance policy would result in the abrogation of a New Jersey contract. Moreover, Latorre's premium for UM coverage was based on the application of New Jersey law to the contract. See Champagne, 893 So. 2d at 788. Therefore, under a conflict-of-laws analysis, New Jersey is the state whose interests are the most seriously impaired if its law is not applied to the insurance policy.

Turning to a review of the Additional Duties provision of the Mercury policy relied upon by Mercury, as set forth above, the provision requires the insured seeking UM/UIM coverage to notify Mercury in writing of a tentative settlement with "the insurer of the **underinsured motor vehicle**" and to allow Mercury thirty days to advance payment to the insured in an amount equal to the tentative settlement so that Mercury can preserve its rights against the insurer, owner, or operator of the underinsured vehicle. However, the UM/UIM Part of the Mercury policy containing the Additional Duties provision defines the term "underinsured motor vehicle" to specifically **exclude** from its definition a land motor vehicle "owned ... by a self-insurer under any motor vehicle responsibility law... ." As set forth above, the evidence presented by Mercury establishes that the vehicle leased to Hunter by Enterprise Leasing was in fact owned by EAN, which is self-insured under the Mississippi Motor Vehicle Safety--Responsibility Law.

While N.J.S.A. § 17:28–1.1(a) mandates uninsured motorist coverage for all motor vehicle liability policies issued in that state in connection with any motor

11

vehicle registered or principally garaged in New Jersey, underinsured motorist coverage is not mandated by statute. N.J.S.A. § 17:28–1.1(b). Except for the requirement that UIM coverage be offered up to certain limits, the New Jersey Legislature imposed no other restrictions on the content of the coverage agreement, and an insurance company has a right to impose whatever conditions it desires prior to assuming its obligations. Allgor v. Travelers Ins. Co., 280 N.J. Super. 254, 259, 654 A.2d 1375, 1378 (App. Div. 1995); Royal Insurance Company v. Rutgers Casualty Insurance Company, 271 N.J. Super. 409, 419, 638 A.2d 924, 929 (App. Div. 1994).

While the district court in its oral reasons found that the use of the word "underinsured" versus "uninsured" in the Additional Duties provision relied upon by Mercury was "a difference without a distinction" such that the relied-upon provision would apply equally to a tentative settlement with an "uninsured motor vehicle," we note that these two terms are defined differently under the UM/UIM Part of the Mercury policy. Moreover, as defined in the Mercury policy, an "underinsured motor vehicle" does not include an "uninsured motor vehicle, and, likewise, an "uninsured motor vehicle" does not include an "underinsured motor vehicle." The clear language of the policy makes the relied-upon Additional Duties provision applicable only to a tentative settlement with the insurer of an "underinsured motor vehicle," and the language of this provision must be applied as written. See Cypress Point Condominium Association, Inc. v. Adria Towers, L.L.C., 226 N.J. 403, 415, 143 A.3d 273, 280 (2016) (when the words of an insurance contract are clear, the function of the court is to enforce it as written and not to make a better contract for either of the parties).

Thus, under the clear and specific language of the Mercury policy, Mercury has not carried its burden of establishing its entitlement to judgment in its favor dismissing Latorre's claims against it based on the relied-upon Additional Duties

12

provision. See LSA-C.C.P. art. 966(A)(3) & (D)(1). Because Mercury failed to make this showing, the burden never shifted to Latorre to present evidence demonstrating that a material factual issue remains.[6]

Turning now to Latorre's motion for partial summary judgment, Latorre contended, as he did in opposition to Mercury's motion for partial summary judgment, that the vehicle driven by Hunter was in fact totally uninsured due to Hunter's violation of the vehicle rental agreement by driving while intoxicated. Specifically, he alleged that the terms of the vehicle rental agreement between Hunter and Enterprise Leasing voided any coverage by the self-insured owner EAN otherwise required by the applicable state's motor vehicle responsibility laws

---

[6]We recognize that where the self-insured owner of a rented vehicle denies coverage, the vehicle loses its status as a self-insured motor vehicle. In those circumstances, however, the vehicle is considered an uninsured motor vehicle. Schechter v. Selective Insurance Company of America, 264 N.J. Super. 299, 302-303, 624 A.2d 625, 627 (App. Div. 1993) (where the self-insured owner of a rented vehicle denied coverage, the self-insured motor vehicle became an "uninsured motor vehicle" within the meaning of N.J.S.A. 17:28-1.1(e)(2)). Moreover, "available" liability insurance is what determines if a vehicle is underinsured. If a party was not liable to the plaintiff, that party's insurance is not "insurance available" to the plaintiff in the context of the statute governing underinsured motorist coverage. See Hreshko v. Harleysville Ins. Co., 337 N.J. Super. 104, 110, 766 A.2d 776, 780 (App. Div. 2001).

As stated above, in opposition to Mercury's motion for summary judgment, Latorre contended that under the language of the Additional Duties provision relied upon by Mercury, he had an obligation to inform Mercury of the tentative settlement only if the Enterprise vehicle was **underinsured**, not where the vehicle was totally uninsured. While the definition of an "uninsured motor vehicle" in the UM/UIM Part of the Mercury policy also specifically **excludes** a land motor vehicle owned by a "self-insured," the policy nonetheless defines "uninsured motor vehicle" to include a land motor vehicle "insured or bonded for bodily injury and property damage liability at the time of the accident; **but the insuring company**, other than the [Mercury] under this policy, **denies coverage....**" (Emphasis in original removed; emphasis by bold added). See also Hreshko, 337 N.J. Super. at 110, 766 A.3d at 780.

Latorre asserted that while the EAN vehicle leased to Hunter was owned by a self-insurer, it was in fact totally uninsured at the time of the accident because the provisions in the Enterprise Leasing vehicle rental agreement voided any coverage otherwise required under the applicable state's motor vehicle responsibility laws where the operator is under the influence of intoxicating substances. Thus, he contended that the EAN vehicle was an uninsured motor vehicle due to Hunter's intoxication, and the Additional Duties provision relied upon by Mercury is inapplicable herein. Mercury, on the other hand, contended in reply that Latorre's argument hinges on the application of Louisiana law to the Enterprise Leasing vehicle rental agreement and that Mississippi law, rather than Louisiana law, governs the interpretation of the vehicle lease agreement.

However, even if we were to find merit to Latorre's argument in opposition, the effect would be the same as that reached herein, i.e., Mercury has not established that the Additional Duties provision, upon which it relies, applies herein. Thus, having determined that under the clear wording of the UM/UIM provisions of the policy, Mercury failed to carry its burden of establishing its entitlement to judgment in its favor as a matter of law, we pretermit consideration of Latorre's argument in opposition to Mercury's motion for summary judgment.

13

where the driver of the rented vehicle was operating the vehicle while intoxicated, provisions which he contended in the district court below were valid under Louisiana's motor vehicle financial responsibility laws. On appeal, Latorre more broadly asserts that neither Mississippi nor Louisiana law would invalidate the provisions in the vehicle rental agreement that list the lessee's intoxication as a breach of the lease serving to void any required insurance coverage by EAN. Accordingly, he contends that the Additional Duties provision of the Mercury policy, which applies only to tentative settlements with **underinsured** motorist vehicles, did not apply herein and, thus, that the district court erred in failing to grant his motion for partial summary judgment finding Mercury provided the contracted-for UM coverage for the instant accident.

Because Mercury would have the burden of proof at trial of proving some exclusion applies to preclude coverage, See Smith, 222 So. 3d at 765, Latorre, in support of his motion for partial summary judgment had only to point to the absence of factual support for one or more elements of Mercury's defense. See LSA-C.C.P. art. 966(D)(1); Action Oilfield Services, Inc., 276 So. 3d at 542. In essence, Latorre asserts that Mercury cannot establish an exclusion of coverage based on the Additional Duties clause because the EAN vehicle leased to Hunter became an "uninsured motor vehicle" when Hunter violated the terms of the vehicle rental agreement by driving it while intoxicated.

Pretermitting whether Mississippi or Louisiana law should govern the interpretation and validity of the provisions of the vehicle rental agreement cited by Latorre that would allegedly render the vehicle "uninsured" due to Hunter's intoxication, our review of the evidence submitted by Latorre in support of his motion for partial summary judgment demonstrates that Latorre failed to establish

14

Hunter's intoxication at the time of the accident.

While Latorre did submit a copy of the accident report, to which there was no objection,[7] indicating that the responding officer suspected that Hunter was under the influence of drugs or alcohol at the time of the accident, the accident report further indicates that tests were administered, and the results thereof were "pending." Additionally, while the officer's typed summary in the accident report indicates that Hunter "was deemed intoxicated at the hospital and cited accordingly," no explanation is given as to how that determination was made or by whom. Moreover, Latorre offered no direct evidence to demonstrate that Hunter was driving while under the influence of drugs or alcohol at the time of the accident. See Stephenson v. Bryce W. Hotard Sunbelt Rentals, Inc., 2019-0478 (La. 5/20/19), 271 So. 3d 190, 192 (per curiam) (where there is no direct evidence of intoxication and circumstantial evidence is relied upon, that circumstantial evidence, taken as a whole, must exclude every other reasonable hypothesis with a fair amount of certainty); see generally Harris v. State through Department of Transportation and Development, 2007-1566 (La. App. 1st Cir. 11/10/08), 997 So. 2d 849, 867, writ denied, 2008-2886 (La. 2/6/09), 999 So. 2d 785 (in a civil case, a blood alcohol concentration level must be interpreted by competent expert testimony in order for a trier of fact to determine its effect on a person's ability to operate a vehicle, and a conclusion cannot be extrapolated as to a driver's intoxication based on a bare numerical test result standing alone).

Accordingly, because a genuine issue of material fact remains as to Hunter's intoxication, Latorre failed to point to the absence of factual support for the applicability of the Additional Duties provision herein on the basis that the vehicle rented to Hunter by Enterprise Leasing became an "uninsured motor vehicle" when

---

[7]As noted in footnote 3 supra, the court is required to consider any documents to which no objection is made. LSA-C.C.P. art. 966(D)(2).

15

any coverage required by the applicable state's financial responsibility law was voided under the vehicle rental agreement by Hunter's intoxication. As such, he likewise failed to establish that an absence of factual support for an element of Mercury's defense – i.e. that the Additional Duties provision of the UM/UIM Part of the Mercury policy, which required an insured to inform Mercury of a tentative settlement with the insurer of an "underinsured motor vehicle-" precludes coverage herein. For these reasons, on the evidence before us, we cannot say that Latorre established his right to judgment in his favor as a matter of law finding Mercury liable to provide the contracted-for UM coverage to Latorre for his damages resulting from the accident at issue.[8]

## CONCLUSION

For the above and foregoing reasons, the portion of the trial court's January 15, 2020 judgment granting Mercury's motion for summary judgment and dismissing Latorre's claims against it is reversed. In all other respects, the judgment is affirmed. This matter is remanded for further proceedings consistent with the views expressed herein. Costs of this appeal are assessed against equally against defendant, Mercury Indemnity Company of America, and plaintiff, Rocco Latorre.

**REVERSED IN PART; AFFIRMED IN PART; AND REMANDED.**

---

[8]In so holding, we note that a summary judgment may only be rendered as to those issues set forth in the motion under consideration by the court at that time. LSA-C.C.P. art. 966(F). The applicability of any other provisions of the Mercury UM/UIM policy or of any relevant state or federal law to those provisions under the facts herein is beyond the scope of the issues raised by Latorre's (or Mercury's) motion.

16